714 So.2d 1070 (1998)
James PAGE, in his capacity as Property Appraiser for Nassau County, Florida; Gwendolyn M. Miller, in her for Nassau County, Florida; and L.H. Fuchs, in his capacity as Executive Director of the Florida Department of Revenue, Appellants,
v.
CITY OF FERNANDINA BEACH, a municipal corporation, Appellee.
No. 96-3645.
District Court of Appeal of Florida, First District.
June 15, 1998.
Rehearing Denied July 24, 1998.
*1072 Larry E. Levy of The Levy Law Firm, Tallahassee; Granville C. Burgess, Fernandina Beach; and Robert A. Butterworth, Attorney General, and Joseph C. Mellichamp, III, Senior Assistant Attorney General, Department of Legal Affairs, Tallahassee,' for Appellants.
Benjamin K. Phipps and George C. Hamm of The Phipps Firm, Tallahassee; and Anthony J. Leggio, Fernandina Beach, for Appellee.
BENTON, Judge.
This case raises questions about the amenability to ad valorem taxation of certain municipally owned real property. We affirm the final judgment insofar as it adjudicated property at a public beach and vacant lots held by the City of Fernandina Beach (City) exempt from ad valorem taxation, but we reverse the final judgment insofar as it held that city property leased to private parties who used it for proprietary purposes was nevertheless exempt.
As Nassau County Property Appraiser, James Page (the property appraiser) assessed the property in question for the years 1990, 1992, and 1993. Its claims for exemptions having been denied, the City filed three separate complaints against appellants in circuit court. Eventually, the cases were consolidated, final judgment was entered, and the property appraiser instituted this appeal, along with Gwendolyn M. Miller, Nassau County Tax Collector, and the Florida Department of Revenue, through its executive director, L.H. Fuchs.
The final judgment concluded that the "City is exempt from ad valorem taxation on the Marina property,"[1] "the airport hang[a]rs," "the vacant lots," "the beach, public restroom and concession stand; ... [but that t]he miniature golf course is subject to ad valorem taxation." Since the City has not taken a cross appeal, the ruling as to the Putt-Putt golf course is not before us. We affirm as to the vacant lots andbecause it, too, was not leased on tax assessment day as to the beach property, but reverse as to the airport and the marina.

Three Tax Years
Insofar as pertinent, the same constitutional and statutory provisions govern in all three tax years in question. The rule has long been:
The taxable status of property is determined on January 1 of each year. See Section 192.042, Florida Statutes (1973). This is the date on which the tax assessor determines whether a particular parcel of property is entitled to exemption from taxation for the tax year. See Overstreet v. Ty-Tan, Inc., 48 So.2d 158 (Fla.1950).
Dade County Taxing Auths. v. Cedars of Lebanon Hosp. Corp., 355 So.2d 1202, 1204 (Fla.1978). See Lake Worth Towers, Inc. v. Gerstung, 262 So.2d 1 (Fla.1972).
Generally, our supreme court has said "all property is subject to taxation unless expressly exempt and such exemptions are strictly construed against the party claiming them." Sebring Airport Auth. v. McIntyre, 642 So.2d 1072, 1073 (Fla.1994) (citing Volusia County v. Daytona Beach Racing and *1073 Recreational Facilities District, 341 So.2d 498, 502 (Fla.1976); Williams v. Jones, 326 So.2d 425, 435 (Fla.1975)).
Where municipal property is used by the municipality that owns it, however, the constitution has established a broad exemption, which the Legislature has implemented by providing that "[a]ll property of the several... municipalities of this state ... used [by them] for governmental, municipal, or public purposes shall be exempt from ad valorem taxation, except as otherwise provided by law." § 196.199(1)(c), Fla. Stat. (1995). Still on the books, this statutory provision antedates the tax years in question.
With regard to City property leased to nongovernmental lessees, section 196.199(2)(a), Florida Statutes (1995), provided at all pertinent times:
Leasehold interests in property of ... municipalities,... shall be exempt from ad valorem taxation only when the lessee serves or performs a governmental, municipal, or public purpose or function, as defined in s. 196.012(6). In all such cases, all other interests in the leased property shall also be exempt from ad valorem taxation.
One law[2] subsequently amending section 196.012(6), Florida Statutes, specifically made the amendment "appl[icable] to the 1994 and subsequent tax rolls." Ch. 94-353, § 59, at 2566, Laws of Fla. Since the present dispute has to do with tax rolls prepared before 1994, this amendment to section 196.012(6), Florida Statutes, does not purport to control. Indeed, no amendment that took effect after January 1, 1993, applies in the present case.[3]See State, Dep't of Revenue v. Zuckerman-Vernon Corp., 354 So.2d 353 (Fla.1977); State ex rel. Riverside Bank v. Green, 101 So.2d 805 (Fla.1958).

*1074 Leased Municipal Property

Property a city has leased to a private entity is exempt from ad valorem taxation only if it is used for what has been called a "governmental-governmental" purpose. See Canaveral Port Auth. v. Department of Revenue, 690 So.2d 1226, 1229-30 (Fla.1996) (holding that "the fee interest in the property at issue is not exempt from ad valorem taxation because the property is leased to a nongovernmental entity for a nongovernmental use"); Capital City Country Club, Inc. v. Tucker, 613 So.2d 448, 452 (Fla.1993). Section 196.012(6), Florida Statutes (1991), provided:
Governmental, municipal, or public purpose or function shall be deemed to be served or performed when the lessee under any leasehold interest created in property of the United States, the state or any of its political subdivisions, or any municipality, agency, authority, or other public body corporate of the state is demonstrated to perform a function or serve a governmental purpose which could properly be performed or served by an appropriate governmental unit or which is demonstrated to perform a function or serve a purpose which would otherwise be a valid subject for the allocation of public funds.[[4]] The term "governmental purpose" includes a direct use of property on federal lands in connection with the Federal Government's Space Exploration Program. Real property and tangible personal property owned by the Federal Government and used for defense and space exploration purposes or which is put to a use in support thereof shall be deemed to perform an essential national governmental purpose and shall be exempt.
"The exemptions contemplated under ... [this provision for property leased to private, profit making lessees] relate to `governmental-governmental' functions as opposed to `governmental-proprietary' functions." McIntyre, 642 So.2d at 1073 (quoting Williams, 326 So.2d at 433).
Our supreme court has rejected the proposition that "a governmental lease to a [for profit] nongovernmental lessee [and so the underlying realty] is exempt from ad valorem taxation if the lessee [merely] serves a public purpose." McIntyre, 642 So.2d at 1073. To avoid giving one private enterprise an advantage over another by virtue of its landlord's identity, the constitution strictly limits exemption from ad valorem taxation. Property leased to profit-making nongovernmental entities is exempt only when such entities use the property to carry out some sovereign function on the municipality's behalf (thereby presumably reducing the municipality's cost of providing governmental-governmental services). "It is the utilization of leased property from a governmental source that determines whether it is taxable under the Constitution." Straughn v. Camp, 293 So.2d 689, 695 (Fla.1974).
"Proprietary functions promote the comfort, convenience, safety and happiness of citizens, whereas government functions concern the administration of some phase of government." McIntyre, 642 So.2d at 1074 n. 1. See generally Chardkoff Junk Co. v. City of Tampa, 102 Fla. 501, 135 So. 457 (1931) (discussing the difference between "an exclusive governmental function" and a municipality's "private or corporate duty" in the context of sovereign immunity).
The law grants no "ad valorem tax exemption to a nongovernmental lessee of governmental property that uses such property for [profit-making] governmental-proprietary purposes," McIntyre, 642 So.2d at 1074, such as operating a hospital, hauling garbage, or operating an incinerator. Because all the lessees in the present case were private entities seeking to make a profit, at issue is whether the leased properties served a "governmental-governmental" purpose or whether they were put to uses that are "purely proprietary and for profit," Williams, 326 So.2d at 433, even if of benefit to the public.

*1075 Airport

The final judgment declared exempt certain property the City owns at the Fernandina Beach Municipal Airport, "officially an uncontrolled airport." Although owned by the City, the property at issue was not "used exclusively by [the City] for municipal or public purposes." Because the City leased the property and did not use it itself, the property did not qualify for the exemption set out in article VII, section 3, of the Florida Constitution of 1968 and section 196.199(1)(c), Florida Statutes, the legislation implementing the constitutional exemption for municipal property unencumbered by lease.
Rawls Aviation and its successor, Island Aviation Services, (Rawls) are or were nongovernmental lessees of part of this property. Rawls was authorized to use the leased premises to conduct a fixed-base operation, offering aviation services to the general public, including chartering aircraft, servicing aircraft, and selling aircraft parts, accessories, fuel, and lubricants, as well as providing catering services and renting cars, all for profit. Additionally, the lease authorized Rawls to sell edibles in vending machines located inside the fixed-base operations terminal.
The lease between Rawls and the City contained provisions obligating Rawls to pay taxes due in connection with the lease between Rawls and the City, including property taxes on the leasehold:
Lessee shall pay all lawful taxes and assessments, utility fees, debts and obligations of every kind or nature whatsoever be they what they may, which, during the term hereof, may become a lien upon or which may be levied by the state, county, city or any other tax levying body, upon any taxable interest of the Lessee acquired in the lease or any taxable possessory right which Lessee may have in or to the premises or facilities hereby leased or the improvements thereon, by reason of its use or occupancy thereof, or otherwise, as well as all taxes on taxable property, real or personal, owned by Lessee in and about said premises, however, this does not include, nor does it obligate Lessee to pay real property taxes upon the remainder of said premises included in the total Airport facility.
Similar provisions in the City's other leases of airport property reflected that the parties to those leases contemplated taxation of the leaseholds.
Another lessee of hangars and other City-owned property at the airport, National Airshows, Inc., was engaged at all pertinent times in the business of putting on air shows at various places around the country. For part of the time in question, National Airshows sublet certain City-owned airport property to Rawls. National Airshows used the City's hangars for the storage and maintenance of its own aircraft and, on at least one occasion, was given special permission to work on specified jet aircraft owned by others. A third lessee of City-owned airport property, S-Tec Corporation, manufactured and tested unmanned aircraft there.
Undertaken by private entities for profit, these uses of City land do not qualify the leased real estate for the exemption available when lessees employ municipally owned property for governmental-governmental purposes. See Walden v. Hillsborough County Aviation Auth., 375 So.2d 283 (Fla. 1979); Volusia County, 341 So.2d at 502; Williams, 326 So.2d at 433; City of Orlando v. Hausman, 534 So.2d 1183 (Fla. 5th DCA 1988); St. John's Assocs. v. Mallard, 366 So.2d 34 (Fla. 1st DCA 1978).
Governmental functions or duties relate to the administration of government or some element of sovereignty, Daly v. Stokell, 63 So.2d 644 (Fla.1953), while proprietary functions are those undertaken for public benefit and involve no exercise of sovereignty. City of Miami v. Oates, 152 Fla. 21, 10 So.2d 721 (1942). If the function is in fact proprietary ... the leased property does not obtain its tax exempt benefit. Williams v. Jones, supra.

St. John's Assocs., 366 So.2d at 37. "Legislative declarations such as those in Ch. [93-233, § 3, at 2381, Laws of Fla.] do not necessarily make the function a commercial lessee performs governmental." Id. See Archer v. Marshall, 355 So.2d 781, 784 (Fla.1978) ("The *1076 Legislature is without authority to grant an exemption from taxes where the exemption has no constitutional basis."). "It is rather the actual use made of the leased property which determines whether it is taxable under the constitution." St. John's Assocs., 366 So.2d at 37. Here the airport property the City leased was taxable because it was not used for sovereign or governmental-governmental purposes.

Beach Concession
The final judgment also deemed exempt property that the City owns on the edge of the Atlantic Ocean (Main Beach), including a structure containing restrooms, showers, a storage area, and an office for City-employed life guards. A sort of lobby occupying about a quarter of the floor area separates the men's facilities from the women's. The City has operated the building itself except during the season in 1990, the only tax year as to which the beach property exemption is in question in the present case. For the period from March 21, 1990, to September 30, 1990, the City contracted with Margie Farris to maintain the restroom facilities in exchange for the use of the lobby area to sell hot dogs and soft drinks to the public. Under the agreement, drafted as a lease of the entire structure, Ms. Farris also paid monthly rent of one hundred dollars.
Without reaching the question whether this arrangement would be incompatible with tax exemption for any or all of the real estate involved, if the lease had been in effect on January 1, 1990, we affirm the trial court's determination that the property was exempt, on the ground that the leasehold did not exist on tax assessment day. See Dade County Taxing Auths. v. Cedars of Lebanon Hosp. Corp., 355 So.2d 1202, 1204 (Fla.1978); Lake Worth Towers, Inc. v. Gerstung, 262 So.2d 1 (Fla.1972); Metropolitan Dade County v. Miami-Dade County Community College Found., 545 So.2d 324 (Fla. 3d DCA 1989). Under these cases, the "actual physical use" to which real property is being put on January 1 of the tax year in question is dispositive on the question of ad valorem taxation.

Marina
Understandably relying on our earlier decision in Page v. Fernandina Harbor Joint Venture, 608 So.2d 520 (Fla. 1st DCA 1992), the learned trial judge concluded that the City-owned marina was exempt from ad valorem taxation. In Fernandina Harbor Joint Venture, we affirmed the circuit court's judgment that the marinathen not yet fully constructedwas exempt from ad valorem taxation as to the 1988 and 1989 tax years,[5] despite leases to various and sundry profit-making entities.
For the reasons set out above, however, we were in error in our earlier decision, as our supreme court has made clear on more than one occasion. See City of Sarasota v. Mikos, 645 So.2d 417 (Fla.1994); McIntyre, 642 So.2d at 1074 ("We disapprove Page v. Fernandina Harbor Joint Venture, 608 So.2d 520 (Fla. 1st DCA 1992) to the extent that it may be read to grant ad valorem tax exemption to a nongovernmental lessee of governmental property that uses such property for governmental-proprietary purposes."). We acknowledge the Florida Supreme Court's disapproval of our decision in Fernandina Harbor Joint Venture.
Municipal operation of a marina is a legitimate municipal corporate undertaking for the comfort, convenience, safety, and happiness of the municipality's citizens. Indeed, the uncontradicted expert testimony was that operation of this marina constituted a proper municipal or public function. When a city *1077 operates a marina it owns, marina property it has not leased to a nongovernmental entity is exempt from ad valorem taxation. Evidence indicated that some of these marina facilities had previously been operated by the City, and that, by the time of trial in January of 1996, operational responsibilities had once again been assumed by the City. But operating a marina partakes of no aspect of sovereignty and does not warrant an exemption for a marina leased to a nongovernmental operator seeking profits.
During the tax years in question in the present case, the City leased the marina to the Center Street Waterfront Group, Inc. (Group). The Group and various sublessees used City-owned property located at the marina for private gain, much as private entities might use their own property. The Group or its sublessees sold marine fuel and rented moorings. Anne Taylor Coonrod, the operator of Atlantic Bait & Seafood and of a gift shop at the marina, testified that, during the tax years in question, the store, the gift shop, retail and wholesale seafood operations, and a restaurant were private businesses operated for profit on City-owned marina property. None of the marina property the city leased was exempt from ad valorem taxation. See Mikos, 374 So.2d at 460-61; McIntyre, 642 So.2d at 1073-74; St. John's Assocs., 366 So.2d at 37-38.
The City argues, however, that the exemption for the marina property found by the trial court in the judgment under review should be affirmed, even if wrong on general principles, on the authority of section 196.199(5) (1995), Florida Statutes, which has provided at all pertinent times:
(5) Leasehold interests in governmental property shall not be exempt pursuant to this subsection unless an application for exemption has been filed on or before March 1 with the property appraiser. The property appraiser shall review the application and make findings of fact which shall be presented to the value adjustment board at its convening, whereupon the board shall take appropriate action regarding the application. If the exemption in whole or in part is granted, or established by judicial proceeding, it shall remain valid for the duration of the lease unless the lessee changes its use, in which case the lessee shall again submit an application for exemption. The requirements set forth in s. 196.194 shall apply to all applications made under this subsection.
(Emphasis supplied.) By its terms, this statute applies only to leasehold interests in governmental property, not to the fee interest in controversy here. Even as to leasehold interests, moreover, the statute may be read simply as relieving lessees of the obligation to claim the exemption anew every year. See generally Horne v. Markham, 288 So.2d 196, 198 (Fla.1973); Gamma Phi Chapter of Sigma Chi Building Fund Corp. v. Dade County, 199 So.2d 717, 718-19 (Fla.1967). We reject the City's argument that the statute purports to grandfather in an unauthorized tax exemption for real property.

Vacant Lots
The final judgment also found that certain vacant lots the City had obtained (by foreclosure of municipal liens or by deeds in lieu of foreclosure) were to be offered for sale "eventually if they cannot be used as a public park or for municipal purposes (such as a sewage lift station)." To reiterate, article VII, section 3, subsection (a) of the Florida Constitution of 1968 provides: "All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation." For "[p]roperty owned and used" by municipalities, legislation has at all pertinent times also recognized an exemption: If "used for governmental, municipal, or public purposes [municipal property] shall be exempt from ad valorem taxation, except as otherwise provided by law." § 196.199(1)(c), Fla. Stat. (1995).
The property appraiser and parties aligned with him contend that any property a municipality offers for sale is ipso facto not being used for "governmental, municipal or public purposes," just as property a private real estate developer offers for sale is not, quoting City of Bartow v. Roden, 286 So.2d 228, 230-31 (Fla. 2d DCA 1973):

*1078 A secondary point urged by Appellants is that even if the property actually being leased is subject to taxation, the county cannot tax that property which is only "held out for lease". The record reflects that the Authority has carved out certain portions of the airport and designated these areas as being available for lease. In effect, the Authority has created an industrial park at the airport. Many of the buildings within this area are leased. While the balance of the buildings are empty, the Authority is actively trying to find tenants for them. The lower court was correct in determining that by virtue of holding out this property for lease, the City had changed its character to the extent that it became subject to taxation along with the properties which were actually under lease.
But the trial court did not find that the City was actively marketing any of the unimproved lots at issue here. As to the vacant lots the property appraiser assessed, we agree with the trial judge that the present case is governed by the decision in City of Sarasota v. Mikos, 374 So.2d 458, 460-61 (Fla.1979), where the court held
that vacant land held by a municipality is presumed to be in use for a public purpose if it is not actually in use for a private purpose on tax assessment day. This holding eliminates the need for a city to designate a use and prove a public purpose for all vacant land each year, as demanded by the property appraiser. In this case, our holding requires a finding that the vacant land set aside by the City of Sarasota for parks and open spaces or held in reserve for future public needs met the use test for public or municipal purposes on January 1, 1977, as required by the constitution.
The property appraiser did not prove and the trial court did not find that any of the vacant lots were "actually in use for a private purpose on tax assessment day" for any of the years in question.
As to the City's property at the marina and at the airport that was leased to nongovernmental profit-making entities as of January 1 of the tax years in question, we reverse the trial court's grant of exemption. The final judgment is otherwise affirmed.
ERVIN, J., specially concurs.
DAVIS, J., concurs in part and dissents in part.
ERVIN, Judge, specially concurring.
I concur with Judge Benton's decision to affirm in part and reverse in part, and I write only to address the applicability of the 1993 amendment to section 196.012(6), Florida Statutes (Supp.1994), in relation to the tax exemption claimed for the airport property during the years 1990, 1992 and 1993. Section 196.012(6) provides a definition of "governmental, municipal, or public purpose or function" within the context of leasehold interests. In 1993, the legislature amended the statute to include the following language, effective July 1, 1993:[6]
[A]n activity undertaken by a lessee which is permitted under the terms of its lease of real property designated as an aviation area on an airport layout plan which has been approved by the Federal Aviation Administration and which real property is used for the administration, operation, business offices and activities related specifically thereto in connection with the conduct of an aircraft full service fixed base operation which provides goods and services to the general aviation public in the promotion of air commerce shall be deemed an activity which serves a governmental, municipal, or public purpose or function.

(Emphasis added.) The trial court held that the airport was exempt from ad valorem taxation and noted the "clarifying language" of the amended section 196.012(6), but it emphasized that it was not retroactively applying a new exemption to the earlier tax years in question.
A court may consider and apply language in a recent statute that clarifies a prior statute, when doubt or controversy as to the meaning of the original statute leads the legislature to enact the clarifying language. *1079 See Gay v. Canada Dry Bottling Co. of Fla., Inc., 59 So.2d 788 (Fla.1952) (in determining whether bottling company's purchase of bottles was a retail sale subject to taxation under the Revenue Act of 1949, the court considered a 1951 amendment clarifying the meaning of an exemption for containers used for packaging property for shipment). Accord Lowry v. Parole & Probation Comm'n, 473 So.2d 1248 (Fla.1985) (in considering Commission's cancellation of prisoner's presumptive parole release date based upon an attorney general opinion asserting the ineligibility of certain prisoners serving consecutive sentences, the court considered pending legislation which clarified the means of calculating presumptive parole release dates).
The trial court in this case erroneously characterized the amendment as a clarification based upon its examination of a transcript in the record from the proceedings of the state House of Representatives, dated April 2, 1993, wherein a member asserted that the amendment "clarifies language as it relates to public use of airports and ad valorem taxes." There is nothing in the record, however, showing that the airport language was enacted to address any controversy over the interpretation of governmental versus proprietary functions in relation to leasehold interests. Indeed, the governmental-function definition of section 196.012(6) has existed for 27 years, since 1971. As the supreme court stated in State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55 (Fla.1995):
We did state in Lowry [supra] that a clarifying amendment to a statute that is enacted soon after controversies as to the interpretation of a statute arise may be considered as a legislative interpretation of the original law and not as a substantive change. It would be absurd, however, to consider legislation enacted more than ten years after the original act as a clarification of original intent; the membership of the 1992 legislature substantially differed from that of the 1982 legislature.
Id. at 62.
Appellant challenged the exemption on the ground that the lessees were engaged in proprietary, rather than governmental services. Implicit in appellant's challenge is the rejection of the trial judge's construction of the amendment as a "clarification" of longstanding law. Accordingly, appellant was not required to raise "retroactive application" as an issue on appeal.
DAVIS, Judge, concurring in part and dissenting in part.
I concur in the majority's affirmance of the exemption for the vacant lots and beach properties. Believing that the trial court correctly determined that the City of Fernandina Beach (City) is also exempt from ad valorem taxation on the marina and airport properties, however, I respectfully dissent to that part of the majority opinion which reverses the trial court. I would affirm the final judgment in its entirety.
The vacant land held by a municipality is presumed to be in use for a public purpose if it is not actually in use for a private purpose on tax assessment day, City of Sarasota v. Mikos, 374 So.2d 458, 460 (Fla.1979), and therefore, the vacant lot properties owned by the City are exempt from taxation. The beach property is also exempt from ad valorem taxation, as stated by the majority, because the leasehold did not even exist on tax assessment day. Furthermore, I would affirm the trial court's judgment that the use of the beach, public restroom, and concession stand serve a governmental-governmental purpose pursuant to section 196.012(6), Florida Statutes (Supp.1994).
The trial judge correctly found that the exemption for the City's marina property was previously "granted or established by judicial proceeding" in Page v. Fernandina Harbor Joint Venture By and Through Fernandina Marina Investors, 608 So.2d 520 (Fla. 1st DCA 1992) (Fernandina Harbor Joint Venture). Because there was no evidence that the marina property lessees have changed the use of the property since Fernandina Harbor Joint Venture, the exemption established by that judicial proceeding is valid pursuant to section 196.199(5), Florida Statutes (1995), which provides in pertinent part:
If the exemption in whole or in part is granted, or established by judicial proceeding, it shall remain valid for the duration of *1080 the lease unless the lessee changes its use, in which case the lessee shall again submit an application for exemption.
§ 196.199(5), Fla. Stat. (1995).
In Fernandina Harbor Joint Venture, this court affirmed and adopted the trial court's final judgment in its entirety. See Fernandina Harbor Joint Venture, 608 So.2d at 521. The trial judge in Fernandina Harbor Joint Venture found that "Florida courts have long recognized that governmental construction or promotion of recreational facilities, including a public marina, constitutes a valid public function." Id. at 523 (citing State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla.1980); Panama City v. State, 93 So.2d 608 (Fla.1957)). The trial judge further found that the City used tax revenues for years to pay operating expenses for the marina and that lessees' use of the property was identical to that previously undertaken by the City. Id. Historically, the City had never been taxed for either the marina real property or the improvements thereon. Id. at 521. Because the use of the improvements by the lessees was identical to its use by the City, the trial court found that the lessees' use constituted a valid public purpose pursuant to section 196.199(2)(a). Id. at 523. This court affirmed the trial court's holding that the assessments were invalid and that the lessees (and City) were entitled to the exemption from ad valorem taxation. The Florida Supreme Court denied review. See Page v. Fernandina Harbor Joint Venture, 620 So.2d 761 (Fla.1993). The law of the case, establishing the exemption for this marina property, was final at that time.
Contrary to appellants' argument and the majority's opinion, Sebring Airport Authority v. McIntyre, 642 So.2d 1072 (Fla.1994) (Sebring II), does not compel a different result. In Sebring I, the Second District affirmed the circuit court's summary judgment against an airport authority and international raceway denying their request for a public purpose exemption from ad valorem taxation for the property used by the raceway. See Sebring Airport Auth. v. McIntyre, 623 So.2d 541 (Fla. 2d DCA 1993). The Florida Supreme Court held that the operation of the automobile raceway for profit was a governmental-proprietary function, and therefore, a tax exemption was not allowed under section 196.199(2)(a). Sebring II, 642 So.2d at 1074. The court then made the following reference to this court's opinion in Fernandina Harbor Joint Venture:
We disapprove Page v. Fernandina Harbor Joint Venture (citation omitted) to the extent that it may be read to grant ad valorem tax exemption to a nongovernmental lessee of governmental property that uses such property for governmental-proprietary purposes.
642 So.2d at 1074.
It is beyond dispute that the Supreme Court's decision to review Sebring I did not and could not retroactively vest the court with jurisdiction over the long-since-final Fernandina Harbor Joint Venture. By holding that the Supreme Court has made our error in Fernandina Harbor Joint Venture clear on more than one occasion, the majority extends the Supreme Court's review of Fernandina Harbor Joint Venture to its farthest reaches, giving decisions of this court uncertainty and instability, eroding any vestige of finality in our decisions. See Lubell v. Roman Spa, Inc., 362 So.2d 922 (Fla. 1978) (England, J., dissenting). It is the general rule in Florida that all questions of law which have been decided by the highest appellate court become the law of the case which must be followed in subsequent proceedings, both in trial and appellate courts. See Brunner Enterprises, Inc. v. Department of Revenue, 452 So.2d 550 (Fla.1984); Greene v. Massey, 384 So.2d 24 (Fla.1980). The decision of Fernandina Harbor Joint Venture is the law of this case.
Moreover, the Florida Supreme Court's disapproval of Fernandina Harbor Joint Venture only limits the manner in which it may be read. In order "for one case to have the effect of overruling another, the same questions must be involved; they must be affected by a like set of facts and a conclusion must be reached in hopeless conflict with that in the former case." Wood v. Fraser, 677 So.2d 15 (Fla. 2d DCA 1996) (citing State ex rel. Garland v. City of West Palm Beach, 141 Fla. 244, 247-248, 193 So. 297, 298 (1940)). The conclusion reached in *1081 Sebring II is not in "hopeless conflict" with our holding in Fernandina Harbor Joint Venture. The issue in Sebring II was whether the operation of an automobile racetrack for profit was exempt from ad valorem real estate taxation. The court expressly recognized that Sebring was similar to Volusia County v. Daytona Beach Racing and Recreational Facilities District, 341 So.2d 498 (Fla.1976) appeal dismissed, 434 U.S. 804, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977), where it was found that the operation of an automobile racetrack for profit was not (even arguably) a governmental-governmental function. Sebring II, 642 So.2d at 1073. The issues in Fernandina Harbor Joint Venture concerned the exemption of the marina's improvements and leases to nongovernmental lessees when the property was being utilized for a valid public purpose. It is not necessary for a marina to partake of an "aspect of sovereignty" in order to constitute a valid public purpose as defined in sections 196.199(2)(a) and 196.012(6). As stated in Fernandina Harbor Joint Venture,
[u]nder the definitional provisions of Section 196.012(6), a municipal or public purpose is defined to include either a function "which could properly be performed or served by an appropriate governmental unit or which is demonstrated to perform a function or serve a purpose which would otherwise be a valid subject for the allocation of public funds. (emphasis supplied)."
608 So.2d at 523. Clearly the operation of an automobile racetrack and the operation of a marina are distinct and the Florida Supreme Court's holding in Sebring II did not overrule Fernandina Harbor Joint Venture. Because the court lacked jurisdiction to change the result and the above-quoted language from Sebring II does not support the conclusion that the court was expressing any reservations with regard to the ultimate holding in Fernandina Harbor Joint Venture, i.e., that this particular marina does not constitute a governmental-proprietary function, I reject the argument that the Sebring II decision negates the applicability of section 196.199(5) in this case.
Appellants have never contended that we should reconsider our ruling in Fernandina Harbor Joint Venture; there has been no request or argument that we modify the law of the case in light of Sebring II or any other case. More importantly, because Fernandina Harbor Joint Venture is still good law, this panel, consistent with long-standing policy of this court, has no authority to recede from Fernandina Harbor Joint Venture, even if it were inclined to do so, without first seeking en banc consideration from the full court pursuant to Florida Rule of Appellate Procedure 9.331. See Wood, 677 So.2d at 18 (citing In re Rule 9.331, 416 So.2d 1127, 1128 (Fla.1982) ("We would expect that, in most instances, a three-judge panel confronted with precedent with which it disagrees will suggest an en banc hearing.")).
Alternatively, the majority suggests that section 196.199(5), Florida Statutes (1995), the statute which makes Fernandina Harbor Joint Venture relevant, is inapplicable because it only refers to leasehold interests in governmental property and, in this case, the assessment of ad valorem taxation was imposed upon the City's fee interest, not upon the leasehold interest. Implicit in such a confounding analysis is the idea that despite the establishment of an exemption by judicial proceeding, as in Fernandina Harbor Joint Venture, the property appraiser is not prevented from assessing taxes upon the municipality for the same parcels of land. I disagree with that assessment for two reasons. First, the applicability of the exemption granted in Fernandina Harbor Joint Venture to the City's fee interest was never raised by any party at trial or on appeal, and thus has been raised only by the majority. I do not believe it is appropriate for this court to reach alternative grounds for reversal which were not even raised on appeal. Second, the application of section 196.199(5) should not be circumvented when there is a valid public purpose exemption. A property appraiser should not assess taxes on a municipality's fee interest where an exemption on the municipality's leasehold interest has been granted or established by judicial proceeding and the lessees have not changed its use of the property. To do otherwise would be to throw the proverbial "baby out with the bath water," as the taxes would necessarily be paid by city revenues despite the existence of *1082 the leasehold's exemption. Frankly, I am unable to see the logic in a statute which would extend an established exemption on a leasehold interest but would not grant the same exemption to the municipality on their fee interest. Pursuant to section 196.199(2)(a), (nongovernmental) leasehold interests in municipal property are exempt from ad valorem taxation only when the lessee serves or performs a governmental, municipal, or public purpose or function, as defined in section 196.012(6). "In all such cases, all other interests in the leased property shall also be exempt from ad valorem taxation." § 196.199(2)(a), Fla.Stat. (1995)(emphasis supplied). The exemption established in favor of the lessees in Fernandina Harbor Joint Venture should be applicable to the municipality's fee interest. There has been no concession made by the City that the lessees' use of the property was not for a municipal or public purpose or that the use of the property for the tax years at issue has changed since the Fernandina Harbor Joint Venture exemption. The City's fee simple interest in the marina property is exempt from taxation as property owned by a municipality and used for municipal or public purpose.
The trial judge properly analyzed the effect of Sebring II upon Fernandina Harbor Joint Venture and correctly determined that the exemption on the marina property established in Fernandina Harbor Joint Venture remains binding. The exemption for the marina property was established by judicial proceeding and pursuant to section 196.199(5), the exemption shall remain valid for the duration of the lease unless the lessee changes its use. Section 196.199(5) was properly applied and the exemption of the marina property should be affirmed.
Because the legislature has provided a "governmental-governmental" exemption for the operation of the airport property, I cannot agree that the City's airport property is subject to ad valorem taxation.
Governmental, municipal, or public purpose or function shall be deemed to be served or performed when the lessee under any leasehold interest created in property of ... any municipality ... is demonstrated to perform a function or serve a governmental purpose which could properly be performed or served by an appropriate governmental unit or which is demonstrated to perform a function or serve a purpose which would otherwise be a valid subject for the allocation of public funds. For purposes of the preceding sentence, an activity undertaken by a lessee which is permitted under the terms of its lease of real property designated as an aviation area on an airport layout plan which has been approved by the Federal Aviation Administration and which real property is used for the administration, operation, business offices and activities related specifically thereto in connection with the conduct of an aircraft full service fixed base operation which provides goods and services to the general aviation public in the promotion of air commerce shall be deemed an activity which serves a governmental, municipal, or public purpose or function ....

§ 196.012(6), Fla. Stat. (1995) (emphasis supplied).
Although the emphasized language quoted above was added to the statute in 1993, appellants, in their initial brief on appeal, never raised the validity of this amendment or argued that the trial court erroneously applied this statutory amendment. Appellants were obligated to raise this issue on appeal because the Final Judgment explicitly construed the "added [amendment] language not as a new exemption created in 1993but rather as a mere clarification of an exemption that existed since Florida Statute § 196.012(6) (defining public use) was originally created in 1971." If the trial court's construction of the statute, i.e., that the amendment did not create a new exemption but merely clarified existing law, was in error, then it behooved appellants to frame such error as an issue on appeal. The issue is not whether the property appraiser relied upon the new amendment; the issue should have been whether the trial court properly applied section 196.012(6) (and seemingly the "clarifying language" of the 1993 amendment) to the airport property for the tax years at issue. Our court's function is to *1083 review the alleged (and challenged) error(s) committed by the trial court. See Hillsborough County Bd. of County Comm'r v. Public Employees Relations Comm'n, 424 So.2d 132, 134 (Fla. 1st DCA 1982). I am not persuaded, as reasoned by the concurring opinion, that appellants' limited challenge "implicitly" raised the trial court's construction of the statutory amendment for our review. Rather, appellants herein sought reversal of the Final Judgment by merely rearguing the merits of the case, without referencing the decision made by or erroneous reasoning of the trial court. The limited issue presented by appellants was whether the use of the city-owned airport property constituted a proprietary use, Initial Br. of Appellants, p. 26-29, not whether the trial court erred in holding that the 1993 statutory amendment clarified the existing statute nor whether the trial court erred when it applied the statute, as amended, to the airport property.
Despite the trial court's specific finding that "the activity undertaken by the airport lessees is deemed to be an activity which serves a governmental-governmental public purpose as defined by Florida Statute § 196.012(6)," appellants failed to even mention section 196.012(6), its applicability to this property, or the propriety of the trial court's ruling for our review. Appellants raised these issues for the first time in their reply brief. It is well settled that an appellate court cannot consider matters which are raised for the first time on appeal in an appellant's reply brief; the court is confined solely to the points on appeal raised in appellant's main brief. See General Mortg. Associates, Inc. v. Campolo Realty & Mortg. Corp., 678 So.2d 431 (Fla. 3d DCA 1996); Carrasquillo v. Holiday Carpet Serv. Inc., 615 So.2d 862 (Fla. 3d DCA 1993); Mestre Rental Co. v. Resources Recovery (Dade County), Inc., 568 So.2d 1344 (Fla. 3d DCA 1990), overruled in part on other grounds by De Clements v. De Clements, 662 So.2d 1276, 1284 (Fla. 3d DCA 1995); St. Regis Paper Co. v. Hill, 198 So.2d 365, 366 (Fla. 1st DCA 1967); Pursell v. Sumter Elec. Coop., Inc., 169 So.2d 515, 518 n. 2 (Fla. 2d DCA 1964) (generally, matters raised for the first time in appellant's reply brief cannot be considered on appeal).
If section 196.012(6) had not been amended or applied by the trial court below, I would agree that the airport property leases are not tax exempt. Whether the legislature had the authority to grant such an exemption or whether the exemption has a constitutional basis are not issues presented in this case. It would appear that following the majority's rationale, which is contrary to the property appraiser's current interpretation of the statute,[7] the statutory amendment does not exempt the airport property even for the post-1994 tax years due to their "proprietary use." I would affirm the application of section 196.012(6) and the exemption granted to the airport property by the trial court.
The trial court correctly determined that the marina, airport, vacant lots, and beach properties were exempt from ad valorem taxation. Accordingly, I would affirm all of the exemptions granted below.
NOTES
[1] In deciding that the City's marina property was exempt, the trial court addressed the issue on the merits but it also ruled that the question was no longer open:

The Marina is unique to this consolidated action in that, pursuant to Florida Statute § 196.199(5), the City is exempted from ad valorem taxes for the duration of the leases since the exemption has previously been "granted or established by judicial proceeding" and there is no evidence proving that the lessees have changed the use since then. See Page v. Fernandina Harbor Joint Venture, 608 So.2d 520 (Fla. 1st DCA 1992). Consequently, such ad valorem tax exemption remains valid according to Fla. Stat. § 196.199(5)....
We reject this reading of the statute. Like its predecessors, section 196.199(5), Florida Statutes (1995), has to do only with a lessee's obtaining exemptions for "[l]easehold interests in government property." At issue here is the City's own asserted exemptions for its fee interests in real property.
[2] Chapter 94-353, section 59, at 2566, Laws of Florida, added the following to section 196.012(6), Florida Statutes (1993):

The use by a lessee, licensee, or management company of real property or a portion thereof as a convention center, visitor center, sports facility with permanent seating, concert hall, arena, stadium, park, or beach is deemed a use that serves a governmental, municipal, or public purpose or function when access to the property is open to the general public with or without a charge for admission. If property deeded to a municipality by the United States is subject to a requirement that the Federal Government, through a schedule established by the Secretary of the Interior, determine that the property is being maintained for public historical preservation, park, or recreational purposes and if those conditions are not met the property will revert back to the Federal Government, then such property shall be deemed to serve a municipal or public purpose.
[3] Effective May 15, 1993, chapter 93-233, section 3, at 2381, Laws of Florida, added after the first sentence of section 196.012(6), Florida Statutes (1991), the following:

For purposes of the preceding sentence, an activity undertaken by a lessee which is permitted under the terms of its lease of real property designated as an aviation area on an airport layout plan which has been approved by the Federal Aviation Administration and which real property is used for the administration, operation, business offices and activities related specifically thereto in connection with the conduct of an aircraft full service fixed base operation which provides goods and services to the general aviation public in the promotion of air commerce shall be deemed an activity which serves a governmental, municipal, or public purpose or function.
After the last sentence of section 196.012(6), Florida Statutes (1991), chapter 93-233, section 3, at 2381, Laws of Florida, added:
"Owned by the lessee" as used in this chapter does not include personal property, buildings, or other real property improvements used for the administration, operation, business offices and activities related specifically thereto in connection with the conduct of an aircraft full service fixed based operation which provides goods and services to the general aviation public in the promotion of air commerce provided that the real property is designated as an aviation area on an airport layout plan approved by the Federal Aviation Administration. For purposes of determination of "ownership", buildings and other real property improvements which will revert to the airport authority or other governmental unit upon expiration of the term of the lease shall be deemed "owned" by the governmental unit and not the lessee.
The property appraiser did not rely on chapter 93-233, Laws of Florida (1993), and was under no obligation to raise this after-enacted amendment in his initial brief. His clear contention is that, in the years in question, airport property was "not being used for governmental-governmental purpose and would be taxable." Initial Brief, p. 29. The City's answer brief cited "the amendment to Section 196.012(6)," arguing that it was a "clarifying amendment" explicating the prior, governing statutory language. The property appraiser responded in its reply brief that "the 1993 amendment would not apply until tax year 1994."
[4] The language "or which is demonstrated to perform a function or serve a purpose which would otherwise be a valid subject for the allocation of public funds" does not purport to broaden the exemption available to private profit-making lessees who perform governmental-governmental services. This language contemplates instead "educational, literary, scientific, religious or charitable purposes." Art. VII, § 3(a), Fla. Const. (1968).
[5] The Florida Supreme Court declined discretionary review. Page v. Fernandina Harbor Joint Venture, 620 So.2d 761 (Fla.1993). Our decision today does not alter any determination for any tax year other than the three in dispute here: 1990, 1992, and 1993.

Ad valorem taxes assessed against property in this state for any given tax year must stand or fall on its own validity, unconnected with the assessment made against that land during any prior or subsequent year.
Container Corp. of Am. v. Long, 274 So.2d 571, 573 (Fla. 1st DCA 1973). See Southern Bell Tel. & Tel. Co. v. Broward County, 665 So.2d 272 (Fla. 4th DCA 1995); Keith Invs. v. James, 220 So.2d 695 (Fla. 4th DCA 1969) (cited with approval in Spooner v. Askew, 345 So.2d 1055, 1059 n. 17 (Fla.1976)). "Each year's ... exemption must stand or fall on its own validity, unconnected with ... any prior or subsequent year." Op. Att'y Gen. Fla. 74-98 (1974).
[6] Ch. 93-233, §§ 3, 27, at 2381, 2398, Laws of Fla.
[7] The property appraiser testified at trial that he ceased to assess the airport property as taxable after the legislative amendment in 1993. (R. 720-721).