882 So.2d 1009 (2004)
ISLAMORADA, VILLAGE OF ISLANDS, Appellant,
v.
Ervin HIGGS, as Property Appraiser of Monroe County, Appellee.
No. 3D03-1508.
District Court of Appeal of Florida, Third District.
November 19, 2003.
Order Denying Rehearing and Opinion Dissenting From Denial of Rehearing August 11, 2004.
Weiss Serota Helfman Pastoriza Guedes Cole & Boniske and Edward G. Guedes and Nina L. Boniske, for appellant.
John C. Dent, Jr., and Sherri L. Johnson(Sarasota), for appellee.
*1010 Before LEVY, GERSTEN, and WELLS, JJ.
Order Denying Rehearing En Banc and Opinion Dissenting From Denial of Rehearing En Banc August 11, 2004.
LEVY, Judge.
Islamorada, Village of Islands ("Village"), appeals from a Final Summary Judgment entered in favor of Ervin Higgs, the Property Appraiser of Monroe County, Florida ("Property Appraiser"). We reverse.
The Village has exclusively owned and operated the Plantation Yacht Harbor Marina ("Marina") since April 13, 2000. The Marina is a portion of a recreational facility formerly known as Plantation Yacht Harbor, but now known as Islamorada Founders Park ("Founders Park"). The master plan for Founders Park includes various recreational facilities, and administrative offices for the Village and fire rescue. In 2001, the Village operated the Marina for the purpose of serving the recreational needs of both its residents and the general public, including out-of-town visitors. Boat slips at the Marina were rented on a daily, weekly, monthly, or annual basis. The Marina and the services provided at the Marina were available and open to members of the public. The services included, but are not limited to, the use of a boat ramp, dockage, and refueling. The Village set standardized charges for both fueling and dock space. The revenues of the Village's operation of the Marina exceeded the expenses associated with its operation. In setting the rates for the Marina, the Village intended to provide a flow of revenue and funds to the Village's general fund to help pay debt service incurred when the entire facility was purchased. In 2001, the Property Appraiser denied the Village's application for an exemption from ad valorem taxation for the Marina. The Village appealed to the Monroe County Value Adjustment Board ("VAB"). After an evidentiary hearing before a special master, the special master determined that the Marina represented a proper public function, and was not a proprietary venture. The VAB adopted these findings. The Property Appraiser then appealed the VAB's determination by filing suit in the Circuit Court pursuant to Section 194.036, Florida Statutes. Both parties filed Motions for Summary Judgment. The Circuit Court denied the Village's Motion for Summary Judgment and granted the Property Appraiser's Motion for Summary Judgment. This appeal follows.
Municipalities are not subdivisions of the State and, thus, are not immune to taxation. See Greater Orlando Aviation Auth. v. Crotty, 775 So.2d 978, 980 (Fla. 5th DCA 2000) (citing Orlando Utils. Comm'n v. Milligan, 229 So.2d 262 (Fla. 4th DCA 1969), rev. denied, 237 So.2d 539 (Fla.1970)). However, according to Article VII, Section 3(a) of the Florida Constitution, "[a]ll property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation." Moreover, Section 196.199(1)(c), Florida Statutes (2002), provides that the property of the municipalities of the state used "for governmental, municipal, or public purposes shall be exempt from ad valorem taxation, except as otherwise provided by law."
The issue in the instant case is whether a marina that is owned and operated by a municipality is entitled to an ad valorem tax exemption when the marina serves both residents and nonresidents, despite (1) operating in competition with other marinas in the area and (2) generating a profit for the municipality which is deposited into the municipality's general fund. The Village contends that the Marina is entitled to an ad valorem tax exemption because, as the eloquent argument of appellant's attorney clearly demonstrates, the Marina is a recreational facility that is *1011 available to residents and nonresidents and is operated without the involvement of a non-governmental lessee or operator. We agree.
The resolution of the issue centers around whether the Marina is being used exclusively by the Village for municipal or public purposes. If the Marina is being used for municipal or public purposes, then it is exempt from ad valorem taxation. The term "municipal purpose" embraces all activities essential to the health, morals, protection and welfare of the municipality. See Crotty, 775 So.2d at 980 (citations omitted). "Municipal functions" are functions created for or granted for the benefit and advantage of the community included within the corporate boundaries. See id. at 980-81 (citations omitted). Municipal functions are those which "specifically and peculiarly promote the comfort, convenience, safety and happiness of the citizens of the municipality rather than the welfare of the general public." Id. at 981. In Page v. City of Fernandina Beach, 714 So.2d 1070, 1076 (Fla. 1st DCA 1998), the First District stated,
Municipal operation of a marina is a legitimate municipal corporate undertaking for the comfort, convenience, safety, and happiness of the municipality's citizens.... When a city operates a marina it owns, marina property it has not leased to a nongovernmental entity is exempt from ad valorem taxation.
(emphasis added). We agree with the foregoing language from the First District.
In the instant case, it is abundantly clear that, despite the fact that the Village earns a profit from its operation of the Marina, the Marina exists and is operated for the comfort, convenience, safety, and happiness of the citizens of the Village. Accordingly, the Order granting Summary Judgment in favor of the Property Appraiser is reversed with directions to enter Summary Judgment in favor of the Village.
Reversed and remanded with directions.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
After Oral Argument having been heard by the Court, the Motion for Rehearing En Banc is denied.
COPE, LEVY, GODERICH, GREEN, SHEVIN and WELLS, JJ., concur.
FLETCHER, Judge (dissenting).
The majority has concluded that Islamorada's marina is entitled to tax exemption. I disagree.
In order for the marina to be exempted from ad valorem taxation Islamorada [the Village] must prove[1] that the marina meets the requirements of Article VII, Section 3(a), Florida Constitution:
"All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation."[2]
The marina is owned by the Village and not leased to anyone.[3] The issues then are *1012 whether the property is used by the Village for a municipal purpose and, if so, whether the property is exclusively used for that purpose. In that regard, other Florida courts have been clear as to municipal purpose or functions. "`Municipal functions' are those ... for the ... benefit and advantage of the urban community embraced within the corporate boundaries." Greater Orlando Aviation Auth. v. Crotty, 775 So.2d 978, 980-81 (Fla. 5th DCA 2000), rev. dismissed, 790 So.2d 1103 (Fla.2001)[e.s.]. "Our courts have ruled that the municipal functions include functions which specifically and peculiarly promote the comfort, convenience, safety and happiness of the citizens of the municipality rather than the welfare of the general public." Crotty at 981 [e.s.]. Specifically as to marinas the First District Court, in Page v. Fernandina Beach, 714 So.2d 1070, 1076 (Fla. 1st DCA), rev. denied, 728 So.2d 201 (Fla.1998), pointed out that the "Municipal operation of a marina is a legitimate municipal corporate undertaking for the comfort, convenience, safety and happiness of the municipality's citizens." [e.s.]
The Fifth District's ultimate conclusion in Greater Orlando Aviation Auth. v. Crotty is:
"The question here is whether the hotel property provides for the comfort, convenience, safety and happiness of the citizens of Orlando. We agree with the trial court's conclusion that it does not. The purpose of the hotel is not to serve the citizens of Orlando, but to serve persons who reside elsewhere and therefore require public accommodations. It is not like a park or a marina constructed for the enjoyment of the citizenry as in Page ... [r]ather the hotel's purpose was to make a profit and not to provide for the citizens of Orlando. The city might just as well open a pizzeria."
775 So.2d at 981 [e.s.](footnotes omitted).
In Department of Revenue v. City of Gainesville, 859 So.2d 595, 601 (Fla. 1st DCA 2003), the court stated:
In analyzing whether a provision of services constitutes a municipal purpose pursuant to Article VII, Section 3(a) the focus is whether the function promotes comfort, convenience, safety, and happiness of the citizens of the municipality. [e.s.]
Thus, if the municipality's proprietary use is to serve the "general public," rather than just the "urban community embraced within the corporate boundaries,"[4] then it is not a municipal purpose and is constitutionally prohibited from being exempted from taxation.
So, does the Village's marina serve the general public? As laid out in the panel opinion,[5] as well as the trial court's final summary judgment,[6] the Village operated the marina for the purpose of its serving the "general public"[7] as a first class, full service marina catering to owners of large boats throughout the United States and the world.[8]
As it serves the general public the marina is not a municipal use and is not entitled *1013 to tax exemption. But let us assume for argument's sake that the marina use is a municipal use on the (erroneous) theory that some boat slips are available to the citizens of the Village. (This would require us to ignore Crotty, Page, and City of Gainesville.) The Village still would not have shown that the marina passes the constitutional test of Article VII, Section 3(a), which permits exemption only when the municipal property is used exclusively for a municipal purpose, i.e., exclusively for use by the Village's citizens.[9] Obviously, this is not the case. For this reason also the marina is prohibited from receiving tax exemption.
The Village tries to avoid this impact of general public use by arguing that the use of the marina by the world's boaters is incidental or generates "incidental" revenue, thus the use by Village citizens is "exclusive." For this proposition the Village cites several decisions: Dade County v. Pan American Airlines, 275 So.2d 505 (Fla.1973); Gwin v. City of Tallahassee, 132 So.2d 273 (Fla. 1st DCA 1961); Saunders v. City of Jacksonville, 157 Fla. 240, 25 So.2d 648 (Fla.1946) and Northcutt v. Orlando Util. Comm'n, 614 So.2d 612 (Fla. 5th DCA 1993). With the soon-to-be-discussed exception of Gwin, these cases cast no light.
And so it is necessary to do an analysis of "incidental use." First, the dictionary definition of "incidental" is:
"Occurring as a fortuitous or minor concomitant."[10]
"Fortuitous" is defined as:
"Happening by accident or chance."[11]
It is not difficult to recognize that the marina's availability to the general public did not happen by accident or chance. This class A marina is deliberately open to the world's boaters by design of the Village. Further, the use by the general public does not occur as a minor concomitant (minor "accompaniment").[12] Just as the marina is available to Villagers, it is available to the general public. Each availability is part of the purpose for which the marina was established, i.e., housing sea-going vessels. No incidental use there.
What, then, is an incidental use? As previously stated, Gwin v. City of Tallahassee is the only helpful case the Village cited in relation to incidental uses. Unfortunately for the Village's argument, Gwin supports the property appraiser's position. From Gwin v. City of Tallahassee, is the examination of what comprises an incidental use:
"This court takes judicial notice of the fact that in many municipal and county buildings ... space is leased or concessions are granted to private individuals for the sale of food, magazines, newspapers, public telephones and other things which are mere incidents to the main or primary purpose of the buildings, but are for the convenience of those who use the buildings for a public purpose." [emphasis is the court's.]
132 So.2d at 277 (quoting Gate City Garage, Inc. v. City of Jacksonville, 66 So.2d 653, 659 (Fla.1953)). Substitute "marinas" for "buildings" and the instant situation is *1014 clear. The Village's "incidental use" argument fails.
The marina is precluded by Article VII, Section 3(a), Florida Constitution, from being granted tax exemption. I would set aside the panel opinion and affirm the trial court's decision.
I would add that taxing the marina is the only equitable thing to do. If the marina does not pay property taxes it is not carrying its share of the costs of services provided by Monroe County and the various relevant taxing districts serving Monroe County (and the Village). The marina's fair share of taxes thus becomes the burden of the other Monroe County taxpayers. As the Florida Supreme Court put it, in ITT Comty. Dev. Corp. v. Seay, 347 So.2d 1024, 1028 (Fla.1977):
"Democratic philosophy mandates that every taxpayer be treated consistently, and that everyone contribute his [or her] fair share, no more and no less, to the tax revenues."
Couldn't be said better.
SCHWARTZ, C.J., and GERSTEN and SHEPHERD, JJ., concur.
NOTES
[1] Tax exemptions are strictly construed against the party claiming them. Sebring Airport Auth. v. McIntyre, 642 So.2d 1072 (Fla.1994).
[2] As related to qualifications for tax exemption, "municipal purpose" and "public purpose" are synonymous. Daytona Beach R & R Dist. v. Paul, 179 So.2d 349 (Fla.1965).
[3] If leased to a private entity for a proprietary use for that entity to make a profit, municipally owned property is not tax exempt. Page v. City of Fernandina Beach, 714 So.2d 1070 (Fla. 2d DCA 1998), rev. denied, 728 So.2d 201 (Fla.1998).
[4] Crotty, 775 So.2d at 981.
[5] Islamorada, Village of Islands v. Higgs, 28 Fla. L. Weekly D2650, 2003 WL 22715633. 882 So.2d 1009 (Fla. 3d DCA Nov.19, 2003).
[6] R. 93.
[7] The "general public," the panel noted, includes out-of-town visitors as well as residents of the Village. "[T]he [m]arina is a recreational facility that is available to residents and non-residents...." Islamorada, 28 Fla. L. Weekly at D2650, 882 So.2d at 1010-11.
[8] It is not a cheap place to park your Bertram. It throws off more revenue than it costs the proprietor (the Village) to operate it.
[9] "Exclusively" has been defined by the Florida Supreme Court as "apart from all others" or "only." Lee v. Gulf Oil Corp., 148 Fla. 612, 4 So.2d 868 (Fla.1941).
[10] The American Heritage Dictionary of the English Language (1979), p. 665.
[11] Id. at 518, 4 So.2d 868.
[12] Id. at 8, 4 So.2d 868.