929 So.2d 569 (2006)
CAPFA CAPITAL CORP. 2000A etc., Appellant,
v.
Bill DONEGAN, etc., et al, Appellee.
No. 5D04-2726.
District Court of Appeal of Florida, Fifth District.
April 13, 2006.
Rehearing Denied May 23, 2006.
David K. Miller of Broad & Cassel, Tallahassee, and Michael S. Davis of Bryant, Miller & Olive, P.A., Tampa, for Appellant.
Kenneth P. Hazouri of DeBeaubien, Knight, Simmons, Mantzaris & Neal, LLP, Orlando, for Appellee Bill Donegan.
No Appearance for Appellee Earl K. Woods.
SHARP, W., J.
CAPFA Capital Corp. 2000A ("2000A"), a Florida non-profit corporation and instrumentality of the City of Moore Haven, appeals from a final summary judgment which determined that as the owner of an apartment complex in Orange County, Florida, it was not entitled to an ad valorem tax exemption. The trial court concluded that although the apartment complex was equitably owned by Moore *570 Haven, a city located in Glades County, Florida, it was not being used for a "municipal or public purpose" and thus it did not qualify for the tax exemption provided for city-owned property in Article 7, section 3(a) of the Florida Constitution. We affirm.
Article 7, section 3(a) provides:
§ 3 Taxes; exemptions:
(a) All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation. A municipality, owning property outside the municipality, may be required by general law to make payment to the taxing unit in which the property is located. Such portions of property as are used predominately for educational, literary, scientific, religious, or charitable purposes may be exempted by general law from taxation.
Although this apartment complex is located outside the city limits of Moore Haven, there is no general law existent that imposes a tax on it or like situated properties owned by cities in Florida. Thus, this fact makes no difference in this case.[1] Nor does 2000A claim an exemption based on "used predominately for educational, literary, scientific, religious, or charitable purposes." Accordingly, the issue in this case is whether the apartment complex is being used for "municipal or public purposes" within the meaning of Article 7, section 3(a).
The record establishes that Moore Haven enacted an ordinance which created the Capital Projects Finance Authority (CAPFA) for the purposes of issuing tax exempt revenue bonds to finance and acquire qualified projects in Glades, as well as in other Florida counties, with the approval of the host county. The City of Moore Haven's council sits as CAPFA's governing Board. In 1998, the ordinance was amended to allow Moore Haven to act through non-profit corporations to administer CAPFA projects.
CAPFA entered into an Interlocal Agreement with Orange County, pursuant to section 163.01, in order to issue bonds to finance acquisition of an apartment complex located in Orange County, known as Jefferson Commons. The Agreement declared that the project met "public uses and purposes" and "governmental functions of public concern" and that it served "the overriding public purpose of the county." The bonds issued for financing the acquisition of the project satisfied the requirements for federal tax exemption, as well as state tax exemption.
CAPFA loaned the bond proceeds to 2000A, a non-profit instrumentality of CAPFA, whose governing board is composed of the same persons who serve on CAPFA's Board. The Florida Department of Revenue recognized 2000A as a municipal organization exempt from sales and use taxes.
On August 1, 2000, 2000A acquired Jefferson Commons, the apartment complex at issue in this case. It is located close to the University of Central Florida. The project must be used for student housing, although university faculty and staff are eligible tenants. Students may attend colleges or universities other than UCF. This project is not affiliated in any way with UCF. 2000A charges market rents for the apartments. The original intent was to use excess revenues to grant students scholarships in the form of rent reductions, although this program was not implemented because of financial difficulties. *571 There are no UCF programs, required student codes, or faculty oversight of the students who are tenants in the complex.
When the project was in the planning stages, CAPFA's administrator, Phillip Bennett, told the CAPFA board that 2000A could expect to receive $90,000 to $100,000 per year in owner fees. The owner fees were capped at one-half of one percent of gross revenue. 2000A passes any revenue through CAPFA to Moore Haven. It is paid in descending order as follows: operating expenses, bondholders' interest and principal payments, reserve and replacement fund, trustee fees, owner's fee and an educational scholarship program.
Bennett acknowledged the predominant purpose of 2000A's ownership and operation of the complex was to generate revenue for Moore Haven. The City passed a resolution restricting the use of any revenues received from Jefferson Commons to "quality of life" projects in the City, such as construction of community parks, purchase of a fire truck, and drainage control.
2000A applied to Orange County for, and was denied, a municipal tax exemption for Jefferson Commons for partial year 2000, as well as for years 2001, 2002, and 2003. 2000A then filed lawsuits against Bill Donegan, the Orange County Property Appraiser, and Earl Woods, the Orange County Tax Collector, to establish its entitlement to an exemption from ad valorem taxation for those years. The cases were consolidated and both sides moved for summary judgment.
The meaning of the words "municipal or public purposes" as used in Article 7, section 3(a) in Florida's 1968 Constitution has been broadly defined by some cases, and more narrowly in others, over the years.[2] For example, this court has stated that "municipal or public purpose" encompassed "all activities essential to the health, morals, protection and welfare of the municipality," that municipal functions are ones created for the "special benefit and advantage of the urban community embraced within the corporate boundaries," and functions which "promote the comfort, convenience, safety and happiness of the citizens of the municipality rather than the welfare of the general public." Greater Orlando Aviation Authority v. Crotty, 775 So.2d 978, 980-981 (Fla. 5th DCA 2000), rev. dismissed, 790 So.2d 1103 (Fla.2001). We quoted from older cases which predate the 1968 Florida Constitution. However, in that case, we held that the profit motive and lack of benefit to the municipal public as opposed to the general public at large, were key factors in our determination that a hotel property located at the airport in Orlando was not being used for municipal or public purposes.
The door began closing on this broader definition of "municipal or public purpose" with the revised 1968 Florida Constitution. Ownership of the property by the municipality was required and if the city leased its property to a private, for-profit entity to perform a profit-making or proprietary function, the exemption was lost. See Sebring Airport Authority v. McIntyre, 783 So.2d 238 (Fla.2001); Sebring Airport Authority v. McIntyre, 642 So.2d 1072 (Fla.1994). Compare Dade County v. Pan American World Airways, Inc., 275 So.2d 505 (Fla.1973); Canaveral Port Authority *572 v. Department of Revenue, 690 So.2d 1226 (Fla.1996). Only when a lessee serves or performs a governmental function is the property entitled to an exemption. Ibid. Further, the Florida Supreme Court ruled that the body of case law surrounding Article 8, section 2(b), Florida Constitution, regarding the power of municipalities to issue bonds to perform municipal functions and services has no application to the ad valorem tax issues and Article 7, section 3(a) cases. Florida Department of Revenue v. City of Gainesville, 918 So.2d 250 (Fla.2005).
More recently the Florida Supreme Court further narrowed the definition or concept of municipal property owned and used for municipal and public purposes, which is exempt from taxation under Article 7, section 3(a). In Florida Department of Revenue v. City of Gainesville, the court reviewed the history of this constitutional provision, and determined that a statute that imposed ad valorem taxes on property owned by a city and used by the city to provide telecommunications services to the public did not violate (on its face) Article 7, section 3(a). It held that providing telecommunications services is not always a municipal or public purpose and that a court must consider the availability of such services through other providers and answer the question: Is this service essential for the welfare of the community?
The court explained that the concept of municipal and public purpose under Article 7, section 3(a) only included activities which are "essential to the health, morals, safety, general welfare of the public within the municipality." Id. (emphasis added) It suggested that certain categories of services which have been traditionally provided by municipalities, such as public housing and utilities, are within the concept and thus remain exempt from taxation.
In this case, 2000A argues that its project is being used to provide housing for students and that public housing projects have been traditionally categorized as serving a municipal or public purpose. In some states, public housing projects have been granted tax exemptions under similar constitutional or statutory exemptions and some have not. See When is Property Owned by State or Local Governmental Body Put to Public Use So As To Be Eligible for Property Tax Exemption, 114 A.L.R.5th 561, § 11, § 18, and § 19.
As the court pointed out in the City of Gainesville case, public housing facilities owned by a municipality may be entitled to a tax exemption under Article 7, section 3(a), if the project was undertaken to address issues essential to the health, safety and morals of the community. Two cases decided in 1941 by the Florida Supreme Court address this issue:
1. State ex rel. Harper v. McDavid, 145 Fla. 605, 200 So. 100 (1941). The court held that property owned by the Pensacola Housing Authority and used for a low rent housing and slum clearance project, was exempt from taxation under the prior Florida Constitution. The court had held that the prior Constitutional provision regarding municipal purpose was not self-executing and needed to be defined by the Legislature. The court deferred to the Legislature's determination in its pronouncement that the project met a municipal purpose because the project was not for profit, was restricted to a low income group, contributed materially to the health, morals, safety and general welfare of the people, and aided in reducing cost of fire prevention and police protection.
2. State v. Cambell, 146 Fla. 532, 1 So.2d 483 (1941). Involved a similar set of facts regarding the Housing Authority of the City of Tampa and its low income *573 housing project. The statute authorizing the tax exemption declared a public need for housing in slum areas or where there was a shortage of accommodations for low income persons and the need to clean up slums because they breed disease and crime and are a menace to the health, safety, morals and welfare of the people.
We do not find that these cases are applicable to this lawsuit. They were decided under earlier Florida Constitution provisions which the court interpreted as requiring it to defer to the Legislature's determination of what constitutes a municipal or public purpose. Further, even if the concept that public housing fulfills an essential municipal or public purpose is currently viable, in those cases discussed above, the projects were aimed at curing urban blight, addressing police, fire and safety issues, and helping the urban poor find decent living quarters. The project in this case was not intended to address such problems, market rents were being charged, and no need or necessity for student housing was demonstrated.
City of Boca Raton v. Gidman, 440 So.2d 1277 (Fla.1983), dealt with whether or not a city could legally contribute funds for use and operation of a child day care center. The center provided subsidized child care services, infant nursery care, pre-school, after school programs, and summer programs for disadvantaged children. The court decided the case based on Article 8, section 2(b), and determined the expenditure was for a "municipal purpose" because it is rationally related to the health, morals, protection and welfare of the municipality. "Providing day care educational facilities for the disadvantaged would seem to be an activity which may be carried on by the state." 440 So.2d at 1280. Such a project might qualify under the more stringent definition of municipal or public purposes espoused by the City of Gainesville case, provided there is a showing of need in the community for such a facility, and that without subsidized care, lower income families would lack access to child care. However, as noted above, the project in this case charged market rents, and there was no effort to show it met any essential or unmet housing needs of students in the Orange County community.
2000A argues that this project is similar to the one in Leon County Educational Facilities Authority v. Hartsfield, 698 So.2d 526 (Fla.1997), for which a student dormitory and food service project serving the students at Florida State University, Florida A & M University and Tallahassee Community College, was found exempt from taxation by the county property appraiser. A non-profit corporation was formed by a county authority to finance, acquire, construct and equip the project and the authority leased it with an option to buy. The court held that the authority was the beneficial or equitable owner of the property and entitled to a tax exemption under Chapter 243, Part II, Florida Statutes, based on the special terms and conditions of the lease. It was structured so that the lessor non-profit corporation could make no profit on the project.
We find this case inapplicable. 2000A is the owner of the project, without dispute, and it has no claim to a tax exempt status under any statute or constitutional provision other than pursuant to Article 7, section 3(a).
Although there may have been some question under prior cases, City of Gainesville clarifies that to qualify for a tax exemption under Article 7, section 3(a), there must be a service to the community which is both necessary and essential to the health, safety and morals of the people. The Jefferson Commons project does not come close to meeting that standard. It is more similar to a telecommunications system *574 established by a city in competition with other private providers. At best, it could be said that the project meets student housing needs in the university area, but without the project, other apartment projects could meet the same need and provide a similar market price.
Nor are student housing projects at market prices a traditional service historically provided by municipalities. Such services have typically been provided by the private sector, or the educational institutions themselves. Tax exemption for a student apartment project owned and operated by an educational institution is unquestionably entitled to tax exemptions under other statutes and provisions of the constitution, but they have no application to 2000A, or to a municipality.
2000A's argument that the Legislature has exempted this kind of housing through various statutes, including sections 159.31[3] and 243.33[4] is without merit. The Legislature lacks authority to grant an exemption from taxes where it has no constitutional basis. Sebring Airport Authority v. McIntyre, 783 So.2d at 238, 247 (Fla.2001).
A further consideration in this case is the fact that the City of Moore Haven set up its complex of instrumentalities to acquire, finance, and operate this apartment complex with the intent of making a profit. The trial judge so found and the record supports the finding. This was a critical factor in the court's determination that tax exemption should be denied to the airport authority in McIntyre. See also Greater Orlando Aviation Authority.
This factor also may imperil tax exemption sought under Article 8, section 2(b). In State v. City of Orlando, 576 So.2d 1315 (Fla.1991), the court invalidated a proposed bond issue because the city proposed to issue bonds and lend the proceeds to other cities or counties and generate income for itself to be used for valid municipal purposes. The court ruled that lending money with the intent to make a profit was not a valid municipal purpose, even though the earned revenue was to be used for general revenue or other unspecified uses of the city. Utilization of the property is the relevant test  not ultimate use of revenues earned. See Orlando Utilities Commission v. Milligan, 229 So.2d 262 (Fla. 4th DCA 1969), cert. denied, 237 So.2d 539 (Fla.1970).
AFFIRMED.
GRIFFIN and SAWAYA, JJ., concur.
NOTES
[1] Florida Department of Revenue v. City of Gainesville, 918 So.2d 250 (Fla.2005); Ford v. Orlando Utilities Commission, 629 So.2d 845 (Fla.1994); Schultz v. Crystal River Three Participants, 686 So.2d 1391, 1393 (Fla. 5th DCA), rev. denied; 697 So.2d 512 (Fla.1997).
[2] Courts have made no distinction between the terms public purpose and municipal purpose in this provision. See Florida Department of Revenue v. City of Gainesville, 918 So.2d 250, 261 (Fla.2005). As one author put it, the definition has been "elusive." Martin M. Randall, The Different Faces of "Public Purpose": Shouldn't It Always Mean The Same Thing? 30 Fla. St. U.L.Rev. 529, 551 (2003).
[3] This is a tax exemption provision under the Florida Industrial Development Financing Act. 2000A argued it was entitled to a tax exemption under chapter 159 but the property appraiser claimed the city was violating the chapter by operating the apartment complex. See § 159.30(1) ("No project financed under the provisions of this part shall be operated by the local agency or any other governmental agency . . ."). The trial court found the parties failed to fully develop their positions regarding chapter 159 and no evidence was presented to allow the court to determine whether the project was governed by chapter 159.
[4] This is a tax exemption provision under the County Higher Education Facilities Authorities Law. The trial court specifically found Jefferson Commons was not a county higher educational facility created under chapter 243 to help the University of Central Florida.