DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE CITY OF FORT PIERCE, FLORIDA,** a Florida municipal corporation, **FORT PIERCE REDEVELOPMENT AGENCY,** a dependent special district of the City of Fort Pierce, **KEN PRUITT,** the **ST. LUCIE COUNTY TAX APPRAISER,** and **LISA VICKERS,** the **EXECUTIVE DIRECTOR OF THE FLORIDA DEPARTMENT OF REVENUE,**
Appellants,

v.

**TREASURE COAST MARINA, LC,** a Florida limited liability company, **RIVERFRONT DEVELOPMENT, LC,** a Florida limited liability company, and **RAINCROSS HOLDINGS, LC,** a Florida limited liability company,
Appellees.

No. 4D14-3064

[May 31, 2016]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; William Roby, Judge; L.T. Case No. 562011CA002968.

Robert V. Schwerer and James T. Walker of Hayskar, Walker, Schwerer, Dundas & McCain, P.A., Fort Pierce, for appellants The City of Fort Pierce and Fort Pierce Redevelopment Agency.

Loren E. Levy and Jon F. Morris of The Levy Law Firm, Tallahassee, for appellant Ken Pruitt, St. Lucie County Property Appraiser.

Pamela Jo Bondi, Attorney General, and Robert P. Elson, Assistant Attorney General, Tallahassee, for appellant Department of Revenue.

Brigid F. Cech Samole and Jay A. Yagoda of Greenberg Traurig, P.A., Miami, and Jerry Stouck of Greenberg Traurig, LLP, Washington, D.C., for appellees Treasure Coast Marina, LC, Riverfront Developers, LC, and Raincross Holdings, LC.

Benjamin K. Phipps of Phipps & Howell, and Harry Morrison, Jr. of Kraig Conn, Tallahassee, for Amicus Curiae Florida League of Cities.

WARNER, J.

We deny the motion for rehearing but withdraw our prior opinion. We substitute the following opinion in its place, including a question certifying an issue of great public importance.

The City of Fort Pierce and Fort Pierce Redevelopment Agency (referred to collectively as "the City"), along with Ken Pruitt, St. Lucie County Property Appraiser, appeal from an order granting final summary judgment in favor of appellees, Treasure Coast Marina, LC, d/b/a Harbortown Marina, Raincross Holdings, LC, and Riverfront Developers, LC (referred to collectively as "Riverfront"). The trial court determined that the City was not entitled to an exemption from ad valorem taxes on marinas owned and operated by the City, concluding that the marinas did not serve a "municipal or public purpose" under article VII, section 3(a) of the Florida Constitution. It relied on cases finding that *Florida Department of Revenue v. City of Gainesville*, 918 So. 2d 250 (Fla. 2005), had narrowed the legal standard for the exemption. We conclude, however, that *Gainesville* did not change the legal standard for municipal purpose under article VII, section 3(a) of the Florida Constitution, and that it used the same definition of municipal or public purpose as in prior court opinions. Under this definition, municipal marinas are traditionally considered exempt from taxation. Thus, the tax exemption was properly applied to the City's marinas, and we reverse the final judgment.

The City owns and operates two marinas—City Marina and Fisherman's Wharf Marina. Riverfront, a privately-owned enterprise, owns and operates Harbortown Marina. In tax years 2011-13, the Property Appraiser exempted the City's marinas from ad valorem taxes. Harbortown Marina was not exempted. Riverfront thereafter brought suit seeking declaratory and injunctive relief against application of the exemption to the City's marinas. The complaint alleged that it was unconstitutional to exempt the City's marinas, because they are commercial enterprises, indistinguishable from a privately-owned enterprise, not used exclusively for a municipal purpose, and not essential to the health, morals, safety, and general welfare of the City's people.

Riverfront and the City each moved for final summary judgment, with the Property Appraiser joining the City's motion. After a hearing, the court granted final summary judgment in favor of Riverfront. In its order, the court noted that the parties had conceded there were no issues of material fact. The court found that in *Gainesville*, 918 So. 2d at 256, the Florida

Supreme Court had modified and narrowed the definition of "municipal or public purpose" with regard to ad valorem tax exemptions, and therefore cases predating *Gainesville* did not apply. Under this interpretation of *Gainesville*, the court found that the City's marinas did not serve a municipal or public purpose, because they previously operated as private marinas and still competed with private marinas such as Harbortown. Additionally, although the court declined to apply *Islamorada, Village of Islands v. Higgs*, 882 So. 2d 1009 (Fla. 3d DCA 2003) (finding municipal marinas traditionally serve a municipal or public purpose), because it predated *Gainesville*, the court nonetheless found *Islamorada* distinguishable from the present case under its interpretation of *Gainesville*. The court therefore enjoined application of the ad valorem tax exemption to the City's marinas for the 2014 tax year. The City, joined by the Property Appraiser, now appeal from this order.

Under article VII, section 3(a) of the Florida Constitution, "[a]ll property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation." This provision, added in the 1968 Constitution, was a change from the 1885 Constitution, which required legislative authorization as to whether an activity served a municipal or public purpose. *Gainesville*, 918 So. 2d at 257-58. The 1968 Constitution eliminated this requirement and made the exemption self-executing. *Id.*

The 1968 Constitution also added the requirement that the municipality both own the property as well as use it exclusively. *Id.* at 257. This was seen as a response to *Daytona Beach Racing & Recreational Facilities District v. Paul*, 179 So. 2d 349, 353 (Fla. 1965), which applied the tax exemption to a municipally-owned but privately-operated racetrack, finding that it served a public purpose because it contributed to the economic well-being of the community. *See Gainesville*, 918 So. 2d at 260. The framers of the 1968 Constitution sought to limit the holding of *Daytona Beach Racing*, not by changing the definition of what constituted a "municipal or public purpose," but by requiring both ownership and exclusive use of the property by the municipality. *Id.* at 259-60. As such, the meaning of "municipal or public purpose" remained the same as in prior decisions:

> There is nothing in the language of article VII, section 3(a) that evinces an intent to create a more restrictive definition of "municipal or public purposes" for property that is owned and used exclusively by the municipality than the definition applied to "municipal purposes" under the 1885 Constitution in [*State ex rel. Harper v. McDavid*, 200 So. 100 (Fla. 1941),] and

3

[*Saunders v. City of Jacksonville*, 25 So. 2d 648 (Fla. 1946),] through the 1968 adoption of the current provision.

*Id.* at 263. *Gainesville* therefore concluded that "the 'municipal or public purposes' for which municipally owned property must be exclusively used in article VII, section 3(a) to qualify for an ad valorem tax exemption encompass activities that are essential to the health, morals, safety, and general welfare of the people within the municipality." *Id.* at 264. This is the same definition set forth by the supreme court in 1941 in *McDavid*, 200 So. at 102, as well as in *Saunders*, 25 So. 2d at 650.[1]

In applying this definition, the *Gainesville* court focused on the word "essential," which it concluded meant "necessity." *Id.* The court found that prior cases also rested on the necessity of the municipal activity in determining tax exemptions. *Id.* at 264-65. Most apropos to this case, the court noted that "the tax-exempt status upheld in [*City of Sarasota v. Mikos*, 374 So. 2d 458 (Fla. 1979),] for vacant land held by a municipality to preserve natural open spaces or for future needs is consistent with the *traditional municipal function of providing parks* for the municipal population." *Id.* at 265 (emphasis added) (citation omitted); *cf. City of Miami Beach v. Hogan*, 63 So. 2d 493, 495 (Fla. 1953) (stating that "[i]n all heavily populated municipalities the police power should be exercised by municipal officials to afford all of the people light, air, [and] an *opportunity for recreation*") (emphasis added).

Because *Gainesville* did not recede from older cases defining a "municipal or public purpose," *Daytona Beach Racing* provides guidance on what constitutes a public purpose.[2] "[T]he purpose of the [speedway] facility is both to increase trade by attracting tourists and to provide recreation for the citizens of the District. We have on numerous cases approved as a public purpose the development of recreational facilities."

---

[1] *Saunders* also noted that a municipal activity's benefit need not be restricted to residents in order to satisfy this test. 25 So. 2d at 651.

[2] Riverside argues that we should not consider *Daytona Beach Racing* because it discusses public purpose in the context of municipal bond validation. Riverside relies solely on *Sebring Airport Authority v. McIntyre*, 642 So. 2d 1072 (Fla. 1994). *Sebring* indeed states that the definition of public purpose in bond validation is not analogous to tax exemption cases. *Id.* at 248, 250. We note, however, that we are not applying bond validation principles here, and even if we were, *Sebring* only discusses this in the context of government-private cases (i.e. cases involving a private lessor or operator of municipal property). *See id.* The present case involves a government-government situation (i.e. property is municipally owned and operated). *Sebring* is silent on such cases. Thus, our reading of *Sebring* does not render *Daytona Beach Racing* inapplicable.

*Daytona Beach Racing*, 179 So. 2d at 352. Indeed, under the 1885 Constitution, the courts gave wide latitude to the legislative judgment of what constituted a public purpose: "The development of the law in this State on this question and particularly a study of the legislative history with relation to public projects of a recreational and entertainment nature reveals the allowance to the public bodies of an extremely wide latitude in this field." *Panama City v. State*, 93 So. 2d 608, 613 (Fla. 1957).

Although there is no statutory definition of "municipal or public purpose" applicable under article VII, section 3(a), when the Legislature has defined the term in analogous contexts, it has included marine facilities in the definition. For example, in the context of determining whether a private lessee of governmental property may qualify for a statutory exemption, airports, maritime and port activities, convention centers, visitor centers, sports stadiums, parks, and beaches are all entities or uses deemed to serve a municipal purpose "when access to the property is open to the general public with or without a charge for admission." § 196.012(6), Fla. Stat. (2014).

Additionally, marinas are generally considered a traditional municipal function. "Florida courts have long recognized that governmental construction or promotion of recreational facilities, including a public marina, constitutes a valid public function." *Page v. Fernandina Harbor Joint Venture*, 608 So. 2d 520, 523 (Fla. 1st DCA 1992), *disapproved of on other grounds*, *Sebring Airport Auth. v. McIntyre*, 642 So. 2d 1072 (Fla. 1994); *see also Islamorada*, 882 So. 2d at 1010-11; *Panama City*, 93 So. 2d at 613.

The present case is similar to *Islamorada*, which also involved the application of the "ad valorem tax exemption when the marina serves both residents and nonresidents, despite (1) operating in competition with other marinas in the area and (2) generating a profit for the municipality." *Islamorada*, 882 So. 2d at 1010. The *Islamorada* court held that such a marina was entitled to the tax exemption because it "is a recreational facility that is available to residents and nonresidents and is operated without the involvement of a non-governmental lessee or operator." *Id.* at 1010-11. Although the trial court in this case found that *Islamorada* was no longer good law, we disagree. As noted above, we disagree with the trial court's finding that *Gainesville* mandated a narrower definition of municipal or public purpose.

*Islamorada* actually defined "municipal functions," characterizing them as "functions created for or granted for the benefit and advantage of the community included within the corporate boundaries[,] which 'specifically

5

and peculiarly promote the comfort, convenience, safety and happiness of the citizens of the municipality rather than the welfare of the general public.'" *Id.* at 1011 (citation omitted) (quoting *Greater Orlando Aviation Auth. v. Crotty*, 775 So. 2d 978, 981 (Fla. 5th DCA 2000)). Under this definition, "[m]unicipal operation of a marina is a legitimate municipal corporate undertaking for the comfort, convenience, safety, and happiness of the municipality's citizens. . . . When a city operates a marina it owns, marina property it has not leased to a nongovernmental entity is exempt from ad valorem taxation." *Id.* (emphasis omitted) (quoting *Page v. City of Fernandina Beach*, 714 So. 2d 1070, 1076 (Fla. 1st DCA 1998)).

In finding that *Islamorada* is no longer good law, the trial court relied on the applications of *Gainesville* in *CAPFA Capital Corp. 2000A v. Donegan*, 929 So. 2d 569 (Fla. 5th DCA 2006), and *City of Gainesville v. Crapo*, 953 So. 2d 557 (Fla. 1st DCA 2007). This reliance was misplaced, as both cases are distinguishable from *Islamorada* and the present case.

In *CAPFA*, the Fifth District Court of Appeal found that a student housing complex, created and administered by a municipality but operated by a non-profit corporation, did not qualify as a municipal or public purpose for the following reasons: it was not within the range of services historically provided by municipalities; it competed with private providers; and it was operated with the intent of making a profit.[3] *CAPFA*, 929 So. 2d at 574.

In *Crapo*, the First District Court of Appeal found that a city's communication towers were subject to ad valorem taxation because they were partially leased to private providers, who sold telecommunications services for profit. *Crapo*, 953 So. 2d at 565. Although the city also used the towers for governmental communications serving a municipal or public purpose, the property was not used exclusively by the municipality. *Id.* A property used by the city as a buffer between its generating plant and residential development was also not exempt, as a private company retained timber rights and was conducting a for-profit timber operation. *Id.* at 565-66. Thus, *CAPFA* did not involve a traditional municipal function,[4] while *Crapo* involved concurrent use by private interests. Where

---

[3] The municipality was the City of Moore Haven located in Glades County. *CAPFA*, 929 So. 2d at 569. Its non-profit corporation purchased the apartment building in the Orlando area. *Id.*

[4] Additionally, *CAPFA* incorrectly characterized the *Gainesville* opinion, finding that *McDavid* was no longer applicable because it was decided under the 1885 Florida Constitution. *CAPFA*, 929 So. 2d at 573. However, *Gainesville* stated

the municipality leases the property to a private interest, "a separate and more restrictive test" applies. *Gainesville*, 918 So. 2d at 260.[5] This test does not apply to property owned and used exclusively by a municipality. *Gainesville*, 918 So. 2d at 261.

Further, *Gainesville* has been applied in harmony with *Islamorada*. In *Zingale v. Crossings at Fleming Island Community Development District*, 960 So. 2d 20, 25 (Fla. 1st DCA 2007), *quashed on other grounds by Crossings at Fleming Island Cmty. Dev. Dist. v. Echeverri*, 991 So. 2d 793 (Fla. 2008), the First District Court of Appeal found that public recreational facilities owned and operated by a community development district, including a golf course, pedestrian playground, and swimming facility, were exempt from ad valorem taxation. The court found that the property "should be treated the same as parks and recreation opportunities traditionally provided by municipalities, which are explicitly recognized as exempt property by the Court in *Gainesville*." *Id.* (citing *Sun 'N Lake of Sebring Improvement Dist. v. McIntyre*, 800 So. 2d 715, 723 (Fla. 2d DCA 2001) (holding that golf courses or tennis courts, owned and operated by a municipality and held open to the public, may serve a public purpose); *Page*, 714 So. 2d at 1070 (finding that a marina operated by a city serves a public purpose)). *Zingale*, in applying *Gainesville*, is consistent with *Islamorada*. Both cases support the City's entitlement to the constitutional tax exemption on the marinas it owns and operates.

We conclude that the City's marinas serve a "municipal or public purpose" under *Islamorada*, *Gainesville*, and the cases predating *Gainesville*. The marinas are open to public use, are exclusively owned and operated by the City, and provide recreation for local residents and support the local economy by attracting non-local residents. In addition, City Marina is part of a larger recreational park complex. Thus, not only do the City's marinas serve a purpose that has been repeatedly and explicitly recognized as a "municipal or public purpose," *see, e.g., Zingale*, 960 So. 2d at 25, they also operate specifically "for the comfort, convenience, safety, and happiness of the municipality's citizens[,]" *Islamorada*, 882 So. 2d at 1011 (quoting *Page*, 714 So. 2d at 981), and serve the public purpose of developing recreational facilities in "increas[ing] trade by attracting tourists and [providing] recreation for the citizens[,]" *Daytona Beach Racing*, 179 So. 2d at 352.

<hr>

that cases decided under the 1885 Constitution were still applicable, and explicitly cited *McDavid* as an example. *Gainesville*, 918 So. 2d at 258.

[5] *See Sebring Airport Auth. v. McIntyre*, 783 So. 2d 238, 246-48 (Fla. 2001) (allowing exemption only if the private entity's use could be performed by the municipality or would be a valid allocation of public funds).

We therefore reverse and remand for a declaration in favor of the City, holding constitutional the Property Appraiser's application of the ad valorem tax exemption to the City's marinas.

We conclude that this case presents an issue of great public importance. There is a large boating community in Florida, supported by a large number of public, as well as private, marinas. The ad valorem tax exemption presents a significant economic impact on these marinas. Accordingly, we certify the following question:

> *IN LIGHT OF FLORIDA DEPARTMENT OF REVENUE V. CITY OF GAINESVILLE, 918 So. 2d 250 (FLA. 2005), DOES A MUNICIPALLY OWNED AND OPERATED MARINA STILL QUALIFY AS A TRADITIONALLY EXEMPT "MUNICIPAL OR PUBLIC PURPOSE" UNDER ARTICLE VII, SECTION 3(a) OF THE FLORIDA CONSTITUTION?*

STEVENSON and FORST, JJ., concur.

*    *    *

***Not final until disposition of timely filed motion for rehearing.***