960 So.2d 20 (2007)
Jim ZINGALE, as Executive Director of the Florida Department of Revenue, an Agency of the State; Wayne Weeks, Clay County Property Appraiser, Appellants,
v.
The CROSSINGS AT FLEMING ISLAND COMMUNITY DEVELOPMENT DISTRICT, a Unit of Special Purpose Government, and Jimmy Weeks, Tax Collector, Clay County, Florida, Appellees.
Nos. 1D06-2026, 1D06-2158.
District Court of Appeal of Florida, First District.
May 8, 2007.
Rehearing Denied July 19, 2007.
*21 Bill McCollum, Attorney General, and Nicholas Bykowsky, Assistant Attorney General, Tallahassee; Larry E. Levy, of The Law Firm, Tallahassee, for Appellants.
Robert M. Bradley, Jr. of Kopelousos & Bradley, P.A., Orange Park; Don H. Lester, of Lester & Mitchell, P.A., Jacksonville, for Appellees.
POLSTON, J.
Appellants Wayne Weeks, the Clay County Property Appraiser, and the Florida Department of Revenue, appeal from the trial court's amended final judgment, after a bench trial, finding several properties owned and operated by appellee, The Crossings at Fleming Island Community Development District, exempt from ad valorem taxation for the tax years 2000 through 2002, and ruling that the Appraiser *22 does not have standing to assert that the applicable statute is unconstitutional.
We affirm the trial court's ruling that the property is exempt under the statutes. However, because we hold that the Appraiser has standing, in his defensive procedural posture of the case, to assert that section 189.403(1), Florida Statutes (1999) (defining a special district as a "municipality" for property tax exemption purposes), is void and in violation of the Florida Constitution, we reverse and remand for the trial court to address the Appraiser's affirmative defense on this constitutional issue.

I. BACKGROUND
The District filed the complaints for declaratory and injunctive relief against appellants. The District is a community development district (CDD) established in Clay County, Florida by general law, as set forth in Chapter 190, Florida Statutes. Pursuant to such statutes, a CDD, such as the District, is a local and independent unit of special-purpose government, created to manage growth and development across the state, as well as to serve the residential and recreational needs of the citizens. The District, in particular, is a residential community in Clay County, which owns and operates several public recreational facilities.
The properties and facilities at issue in this appeal include (1) The Eagle Harbor Golf Club ("golf course"), encompassing an eighteen-hole course, but excluding the bar, restaurant, and pro shop; (2) the Southern Swim and Tennis Center, including an adult swimming pool, a water slide, a children's pool, a grilling area, a volleyball court, tennis courts, and a maintenance building; (3) a Northern Swim Center; and finally (4) four pedestrian playgrounds.
The District asserted that a CDD is a municipality, as that term is used in Florida Statutes, and thus these several properties listed are entitled to an ad valorem tax exemption that was improperly denied by the Clay County Property Appraiser. Alternatively, the District asserted that it was entitled to equitable relief, in the form of a tax exemption, because the Appraiser denied the District an ad valorem tax exemption in violation of equal protection, as well as Florida's uniformity and equality laws.
In response to the complaints for each tax year, the Appraiser raised as his first affirmative defense that section 189.403(1), Florida Statutes, the provision which defines a special district as a "municipality" for property tax exemption purposes, is void and in violation of the Florida Constitution. In response, the District filed a motion to strike this affirmative defense, arguing that the Appraiser is required to presume that legislation is valid, and consequently lacks standing to challenge the constitutionality of section 189.403(1). The trial court granted the District's motion to strike the affirmative defense.
At the bench trial, the District presented two witnesses: Mr. Thomas Platt, Vice-Chairman of the Board of Supervisors for the District, and Mr. Roger Suggs, the Assistant Property Appraiser for Clay County. Mr. Platt testified that the Crossings at Fleming Island was created as a CDD, a unit of local government to serve Florida's goals of managing growth, building infrastructure, and providing recreational facilities for the community. He described the general characteristics of the District as follows, (i) that its governing body is a Board of Supervisors, comprised of five elected supervisors, serving four-year terms; (ii) that its supervisors are subject to standard conflict of interest laws and provisions applicable to all public officials; (iii) that its meetings, activities and documents are subject to Florida's "Government *23 in the Sunshine" laws, such that all meetings must be duly noticed and conducted in public; and finally, (iv) that the Board has the authority to levy non-ad valorem taxes, in the form of special assessments, against the residents of the District.
Mr. Platt also testified about the nature of the specific properties at issue in this case. First, the golf course, though originally developed and run as a private venture, was later purchased by the District and is currently run as a public recreation facility. Members of the public, both residents and non-residents of the District, are charged a single monthly "user fee" for unlimited use and enjoyment of the facilities. The user fee is set by the Board at a level sufficient to pay for the operation and maintenance of the golf facility, as well as to retire the District's existing debt. Mr. Platt testified that when the Board made its decision to purchase the golf course, it issued municipal bonds to raise the necessary funds. User fees, as well as special assessments against District residents, are used to retire the bonds. The golf course is not a for-profit venture. Regarding the day-to-day management of the golf course, the Board employs East West Partners, a management company, who in turn hires the necessary managers and employees. The management company reports directly to the Board, and is charged with implementing policy as set by the Board.
Mr. Platt also testified about the District's northern and southern swim centers. These facilities are apparently funded through two sources. District residents pay special assessments levied by the Board, while non-residents pay a yearly "user fee." Similar to the golf club, the Board never sets the level of the special assessments, nor the user fees, with a profit motive in mind. Finally, Mr. Platt described the four pedestrian playgrounds. The playgrounds, like the swim centers, are funded through special assessments on the residents of the community. Each playground is open and free to the public.
At the conclusion of the trial, the court entered final judgment[1] in favor of the District, holding:
4. The court determines, based on the record in these consolidated cases, that the purposes for which several Properties are used encompass activities that are essential to the health, morals, safety and general welfare of the people within the District. The Properties entitled to exemption are as follows: the golf course (excluding the bar, restaurant and pro shop); the Southern Swim and Tennis Center; the Northern Swim Center; Country Walk Playground; Harbor Lake Playground; Brookstone Playground; and Pine Lake Playground. The Tax Collector shall refund those ad valorem taxes paid on the exempt Properties in accord with the provisions therefor in Florida law.
5. The court determines, based on the record in these consolidated cases, that the purposes for which the following Properties are used do not encompass activities that are essential to the health, morals, safety and general welfare of the people within the District and are not exempt from taxation: the bar, restaurant and pro shop; a 620 acre Wetlands Conservation Area; the Pine Lake Recreation/Green Belt; the Second Wetlands Conservation Area; the Third Wetlands Conservation Area; the First *24 Pine Lake Retention Pond; and Second Pine Lake Retention Pond.
6. The Court further finds that in the years 2000, 2001, and 2002, the Appraiser acted in a manner contrary to the uniformity and equality requirements of Florida Law by the disparity of treatment of the District's property in assessment from that of other property of similar character and use owned by other entities in Clay County. This finding of disparate treatment is a separate and independent basis for the relief granted to the District in this Amended Final Judgment.
The Appraiser argues on appeal that the trial court erred by (i) finding that the golf course and Southern Swim and Tennis Center were entitled to ad valorem tax exemption under Florida law, (ii) granting the District's motion to strike his affirmative defense that section 189.403(1), Florida Statutes (1999) is unconstitutional, and (iii) denying a motion for recusal.[2] The Department of Revenue also argues on appeal that the trial court erred by finding that the property was entitled to ad valorem tax exemption, and challenges all of the exemptions.

II. TAX EXEMPT PROPERTY
Section 189.403(1), Florida Statutes (1999), states:
(1) "Special district" means a local unit of special purpose, as opposed to general-purpose, government within a limited boundary, created by general law, special act, local ordinance, or by rule of the Governor and Cabinet. The special purpose or purposes of special districts are implemented by specialized functions and related prescribed powers. For the purpose of s. 196.199(1), special districts shall be treated as municipalities. The term does not include a school district, a community college district, a special improvement district created pursuant to s. 285.17, a municipal service taxing or benefit unit as specified in s. 125.01, or a board which provides electrical service and which is a political subdivision of a municipality or is part of a municipality.
(Emphasis added).
Section 196.199(1), Florida Statutes (1999), the statutory exemption for government property, provides:
(1) Property owned and used by the following governmental units shall be exempt from taxation under the following conditions:
. . .
(c) All property of the several political subdivisions and municipalities of this state or of entities created by general or special law and composed entirely of governmental agencies, or property conveyed to a nonprofit corporation which would revert to the governmental agency, which is used for governmental, municipal, or public purposes shall be exempt from ad valorem taxation, except as otherwise provided by law.
(Emphasis added).
The Department of Revenue argues that the Florida Supreme Court, in Florida Department of Revenue v. City of Gainesville, 918 So.2d 250 (Fla. 2005), narrowed what should be considered as exempt municipal property. Under that more narrow definition, the Department argues that the trial court erred by treating the District's golf course, swimming pools, tennis courts, and playgrounds as exempt property. We disagree, and affirm *25 the trial court's ruling that these properties are exempt.
In Gainesville, the Florida Supreme Court reviewed this court's decision "holding unconstitutional a law that requires payment by a municipality of ad valorem taxes on property owned and used exclusively by the municipality to provide telecommunications services to the public." Id. at 252-53. The Court held that "[b]ecause we conclude that providing telecommunications services does not as a matter of law always serve municipal or public purposes, ad valorem taxation of a municipality's telecommunications facilities is not facially unconstitutional." Id. at 253.
We agree with the District that the procedural posture of the case before us is very different than the facial constitutional challenge in Gainesville. Id. at 256 (ruling that "a determination that a statute is facially unconstitutional means that no set of circumstances exists under which the statute would be valid"). The Court, in Gainesville, defined the issue before it:
The facial constitutionality of the statute imposing a tax obligation on municipally owned and operated telecommunications facilities hinges on whether providing two-way telecommunications services to the public always serves "municipal or public purposes" as contemplated in article VII, section 3(a). If so, the property used exclusively by a municipality to provide these services cannot be taxed, and the legislation requiring payment of taxes on the property as a condition of operation is unconstitutional on its face.
Id.
After reviewing Florida's constitutional history and related cases, the Court concluded that the "`municipal or public purposes' for which municipally owned property must be exclusively used in article VII, section 3(a) to qualify for an ad valorem tax exemption encompass activities that are essential to the health, morals, safety, and general welfare of the people within the municipality." Id. at 264. The Court then noted that municipalities traditionally provide parks and opportunity for recreation, but noted that telecommunications services have been historically provided by the private sector. Id. at 265. The Court stated:
[A] municipality, using infrastructure advantages gained from its pre-existing utility operations, may enter a market in which a high level of service and competition already exists without introducing new levels of service, fostering innovation, or encouraging infrastructure investment. If that is the case, the municipal telecommunications company does not provide a service that is essential to the health, morals, safety, and general welfare of the people within the municipality.

Because this is a facial challenge to the constitutionality of legislation taxing municipal use of municipally owned property, we need not determine whether the specific services provided by the City pass this test. As stated above, in a facial constitutional challenge, we determine only whether there is any set of circumstances under which the challenged enactment might be upheld. . . . We conclude that in a situation in which municipal telecommunications services do not promote any of the goals set forth above from section 364.01, Florida Statutes, for the benefit of the municipal population, property used to provide those services does not serve "municipal or public purposes" and therefore is not exempt from ad valorem taxation under article VII, section 3(a).
Id. at 265-66 (emphasis added) (footnote omitted).
Unlike the Gainesville case, the trial court addressed, by conducting a bench *26 trial, whether the specific services provided by the District are essential to the health, morals, safety, and general welfare of the people. The trial court held, on the evidence including the background facts described above, that the specified properties were used for a proper municipal purpose and therefore exempt. Significantly, the evidence shows that the property is open to the public and is not operated for profit, notwithstanding that it is operated by a management company. Because the property, for exemption purposes, should be treated the same as parks and recreation opportunities traditionally provided by municipalities, which are explicitly recognized as exempt property by the Court in Gainesville, we agree and affirm the trial court's ruling on that issue. See Sun N Lake of Sebring Improvement Dist. v. McIntyre, 800 So.2d 715, 723 (Fla. 2d DCA 2001) (recognizing that "[i]t is possible that a golf course or tennis courts, owned by a municipality and held open to the public, and not operated in conjunction with a for-profit business, may serve an exclusively public purpose;" citing Page v. City of Fernandina Beach, 714 So.2d 1070 (Fla. 1st DCA 1998) (holding that operation of marina by city serves public purpose entitling city to tax exemption), and Am. Golf of Detroit v. City of Huntington Woods, 225 Mich.App. 226, 570 N.W.2d 469 (1997) (likening certain golf courses to public parks)).
However, we agree with the Appraiser that the trial court erred by finding as an alternative basis for granting the exemption, that "the Appraiser acted in a manner contrary to the uniformity and equality requirements of Florida Law by the disparity of treatment of the District's property in assessment from that of other property of similar character and use owned by other entities in Clay County." There is not competent substantial evidence to show that the District was treated differently from all, or substantially all, similar properties in Clay County. See Deltona Corp. v. Bailey, 336 So.2d 1163, 1167-68 (Fla. 1976) (ruling that it is essential to any equal protection claim premised on allegations of non-uniform tax assessments, to show that the subject property was assessed at a value higher than all, or substantially all, similar properties in the county). Therefore, we agree with the Appraiser that the trial court erred by granting an exemption based on the separate and independent ground of disparate treatment, and reverse on this issue.

III. APPRAISER'S STANDING
The trial court held that the Appraiser does not have standing to assert that section 189.403(1) is void and in violation of the Florida Constitution.[3] The Appraiser argues on appeal that he has standing because he may defensively raise the constitutionality of a statute and, alternatively, he may raise the constitutionality of a statute to protect public funds. Because we agree with the Appraiser that he may defensively raise the constitutionality of section 189.403(1), we do not reach the alternative public funds argument.
Although the District concedes that the Appraiser raises the constitutionality of section 189.403(1) in a defensive posture by raising it as an affirmative defense, it argues that the Appraiser nevertheless does *27 not have standing, citing Sun N Lake and Justice Bell's specially concurring opinion in Sunset Harbour Condominium Association v. Robbins, 914 So.2d 925, 933 (Fla. 2005).
In Sun N Lake, the Second District Court of Appeal noted that the property appraiser was raising the constitutionality of section 189.403(1), the same statute at issue in this case, in a defensive posture but declined to find that the appraiser had standing, following and quoting from Turner v. Hillsborough County Aviation Authority, 739 So.2d 175 (Fla. 2d DCA 1999) ("It both defies logic and violates the rule of State ex rel. Atlantic Coast Railway Co. to suggest that Turner can ignore the law by denying an exemption based on his belief that it is unconstitutional and then be allowed to ask the court to approve his disobedience by upholding his denial"). Sun N Lake, 800 So.2d at 721-22. The Second District Court of Appeal certified conflict on the standing issue with Fuchs v. Robbins, 738 So.2d 338 (Fla. 3d DCA 1998) (holding, en banc, that the property appraiser had standing to defensively raise constitutionality although the appraiser filed the complaint in circuit court). Id. at 722.
The Turner decision, that was followed by the court in Sun N Lake, was reviewed by the Florida Supreme Court, along with the Third District Court of Appeal's decision in Fuchs. See Fuchs v. Robbins, 818 So.2d 460 (Fla. 2002). Procedurally, in both Turner and Fuchs, the property appraiser filed a complaint in circuit court to address the value adjustment board ruling in favor of the taxpayer. The Florida Supreme Court stated:
The initial question presented is whether, in an action filed by a property appraiser seeking review of an adverse decision of the VAB which has overturned the appraiser's ad valorem tax assessment on a subject property, the appraiser may, within an appeal pursuant to section 194.036, Florida Statutes (1997), challenge the validity of a statute on the basis that such statute is contrary to limitations imposed by the United States Constitution or the Florida Constitution. We conclude that an appraiser may not, in that context, challenge the constitutionality of an applicable valuation statute.

Fuchs v. Robbins, 818 So.2d at 463 (emphasis added). The Court chose to specifically limit its holding to the particular procedural context of the two cases it was reviewing. The Court then went on in its discussion to describe two instances in which the property appraiser may have standing to challenge the constitutionality of a statute. Id. at 464.
After recognizing that, historically, an appraiser cannot initiate an independent action challenging the constitutionality of a statute, the Court recognized two exceptions: (1) if the taxing statute at issue involves the disbursement of public funds, and (2) if the constitutionality is raised as a defense in an action initiated by the taxpayer. Id. at 464. Regarding the defensive posture exception, the Court stated:

The appraiser may also raise such a constitutional defense in an action initiated by the taxpayer challenging a property assessment. See Department of Educ. v. Lewis, 416 So.2d 455, 458 (Fla. 1982) (observing that, while state officers "must presume legislation affecting their duties to be valid, and do not have standing to initiate litigation for the purpose of determining otherwise," because, in such case, they do not "have a sufficiently substantial interest or special injury to allow the court to hear the challenge," if "the operation of a statute is brought into issue in litigation *28 brought by another against a [state officer, the officer] may defensively raise the question of the law's constitutionality").
Id. (emphasis added) (alteration in original). The procedural posture of the Appraiser, in the case at bar, falls squarely within the defensive exception described by the Florida Supreme Court. Because Turner provided the basis for the ruling in Sun N Lake, and the Florida Supreme Court, subsequent to the ruling in Sun N Lake, reviewed Turner and Fuchs, and explicitly ruled that the Appraiser may bring a constitutional challenge in a defensive posture, we decline to follow Sun N Lake as urged by the District.
In Sunset Harbour Condominium, the property appraiser raised a constitutional challenge as an affirmative defense to a suit initiated by taxpayer Sunset Harbour Condominium Association. 914 So.2d at 927. The Florida Supreme Court held that the Association waived any objection to the property appraiser's constitutional defense, so the standing issue was not reached by the Court. Id. at 928. However, Justice Bell, in a specially concurring opinion, in which Chief Justice Pariente concurred, wrote an opinion "to clear up confusion" regarding the language quoted above from Fuchs v. Robbins, 818 So.2d 460 (Fla. 2002).
Justice Bell opined that "there is no adequate support in our case law for the defensive posture dictum in [Fuchs v. Robbins] and that such a defense is contrary to our holding in State ex rel. Atlantic Coast Line Railway Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922)." Sunset Harbour Condominium, 914 So.2d at 933 (Bell, J., specially concurring). Justice Bell described his opinion as dictum addressing prior dictum of the Court. Id. at 933 n. 7. Without addressing the merits of Justice Bell's opinion, we follow the explicit language of the majority's opinion in Fuchs v. Robbins, quoted above, which provides defensive standing to the property appraiser in this case.
In Fuchs v. Robbins, the Court did not overlook Atlantic Coast Line, relied on by Justice Bell. 818 So.2d at 464 n. 3. The Court cited and quoted from Atlantic Coast Line for the general rule that "every law found upon the statute books is presumptively constitutional until declared otherwise by the courts," and that "ministerial officers must obey it, until in a proper proceeding its constitutionality is judicially passed upon." Id. But the Court, in the very next sentence of the opinion, recognized the defensive exception to the general rule for standing for property appraisers. Id. at 464. Accordingly, although respectful of Justice Bell's specially concurring opinion on the issue, we follow the clear dictates of the majority's ruling in Fuchs v. Robbins.

Conclusion
The District's property, at issue on appeal, is exempt under the applicable statutes because section 189.403(1), Florida Statutes (1999), defines a special district as a municipality for property tax exemption purposes, and we agree with the trial court that the purposes of the property encompass activities that are essential to the health, morals, safety and general welfare of the people. Accordingly, we affirm the trial court's ruling that the property is exempt under the statutes.
We also hold that the Appraiser has standing, in his defensive procedural posture of the case, to assert that section 189.403(1) is unconstitutional. Therefore, we reverse and remand for the trial court to address the Appraiser's affirmative defense on this constitutional issue.
AFFIRMED in part; REVERSED in part and REMANDED with directions.
*29 BROWNING, C.J., concurs; KAHN, J., concurs in part and dissents in part with written opinion.
KAHN, J., concurring in part and dissenting in part.
I would affirm the trial court's ruling that the Appraiser does not have standing to challenge the constitutionality of section 189.403(1), Florida Statutes. In all other regards, I agree with the majority opinion.
After reviewing the case law, I find that Justice Bell's concurring opinion in Sunset Harbour Condominium Ass'n is an accurate and persuasive exposition of the law. See Sunset Harbour Condo. Ass'n v. Robbins, 914 So.2d 925, 933-38 (Fla. 2005) (Bell, J., specially concurring). I also agree with the holding of the Second District Court of Appeal in Sun N Lake of Sebring Improvement District v. McIntyre, to like effect. 800 So.2d 715 (Fla. 2d DCA 2001). See also Turner v. Hillsborough County Aviation Auth., 739 So.2d 175 (Fla. 2d DCA 1999) (finding property appraiser lacked standing to challenge constitutionality of section 196.012). Justice Bell's opinion in Sunset Harbour Condominium Ass'n amply establishes that the so-called defensive posture exception to standing is aberrational and not a controlling principle of Florida law. Sun N Lakes, like the present case, sufficiently illustrates the shortcomings of an attempt to bolster the defensive posture exception. In Sun N Lakes, as here, the appraiser attempted to avail himself of the defensive posture exception by unilaterally refusing to follow an unequivocal statute passed by the Florida Legislature. 800 So.2d at 719. When the entity entitled to the statutory exemption then sought to enforce the exemption, the appraiser "defended" by raising the constitutionality of section 189.403(1). See id.
Had the Appraiser not unilaterally determined he would not follow the law, hardly a defensive move, no suit would have been brought and no defenses would have been raised. My review of the case law has led me to conclude that the defensive posture exemption, as it would apply on the present facts, is something of an artificial construct that defeats the rule of State ex rel. Atlantic Coastline R. Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922). Accordingly, I would uphold the trial court's ruling prohibiting the Appraiser from challenging the constitutionality of the statute and would affirm in all other respects.
NOTES
[1] The final judgment was later amended by the trial court to add assessment of costs and interest, which are not at issue in this appeal.
[2] We reject the Appraiser's argument on recusal because his motion for recusal was not timely.
[3] The Appraiser's constitutional challenge is that the legislature is without authority to grant the same exemptions to CDDs as municipalities because there is no basis in the Florida Constitution for such treatment. See Sun N Lake, 800 So.2d at 720-21 (discussing the constitutional challenge to section 189.403(1) and recognizing that the argument may have merit, but not reaching the merits because of its ruling that the appraiser did not have standing).