991 So.2d 793 (2008)
The CROSSINGS AT FLEMING ISLAND COMMUNITY DEVELOPMENT DISTRICT, etc., Petitioner,
v.
Lisa Reinhardt ECHEVERRI, etc., et al., Respondents.
No. SC07-1556.
Supreme Court of Florida.
July 3, 2008.
Rehearing Denied September 19, 2008.
*794 Don H. Lester of Lester and Mitchell, P.A., Jacksonville, Florida, and Robert M. Bradley, Jr. of Kopelousos and Bradley, P.A., Orange Park, FL, for Petitioner.
Larry E. Levy and Loren E. Levy of The Levy Law Firm, Tallahassee, FL, for Respondent Wayne Weeks, Clay County Property Appraiser.
Bill McCollum, Attorney General, Tallahassee, Florida, and Louis F. Hubener, Chief Deputy Solicitor General, Tallahassee, FL, for Respondent Lisa Echeverri, Executive Director of the Florida Department of Revenue.
Victoria L. Weber and Sarah M. Doar of Hopping, Green and Sams, P.A., Tallahassee, Florida, and Roy C. Young of Young van Assenderp, P.A., Tallahassee, Florida, on behalf of the Florida Chamber of Commerce; Gaylord A. Wood, Jr., B. Jordan Stuart, and J. Christopher Woolsey of Wood and Stuart, P.A., Bunnell, Florida, on behalf of Abe Skinner, Collier County Property Appraiser, Kristina Kulpa, Hendry County Property Appraiser, Alvin Mazourek, Hernando County Property Appraiser, Ed Havill, Lake County Property Appraiser, Francis Akins, Levy County Property Appraiser, Laurel Kelly, Martin County Property Appraiser, Sharon Outland, St. Johns County Property Appraiser, David Johnson, Seminole County Property Appraiser, Ronnie Hawkins, Sumter County Property Appraiser, and Morgan B. Gilreath, Jr., Volusia County Property Appraiser; Elliott Messer and Thomas M. Finley of Messer, Caparello and Self, P.A., Tallahassee, Florida, on behalf of Greg Brown, Santa Rosa County Property Appraiser, and Chris Jones, Escambia County Property Appraiser; and Sherri L. Johnson of Dent and Johnson, Chartered, Sarasota, Florida, on behalf of the Florida Association of Property Appraisers, Inc., as Amici Curiae.
WELLS, J.
This case is before the Court for review of the decision of the First District Court of Appeal in Zingale v. Crossings at Fleming Island Community Development District, 960 So.2d 20 (Fla. 1st DCA 2007) (Crossings). The district court certified that its decision is in direct conflict with the decision of the Second District Court of Appeal in Sun `N Lake of Sebring Improvement District v. McIntyre, 800 So.2d 715 (Fla. 2d DCA 2001) (Sun `N Lake), "on the issue of whether a property appraiser has standing to defensively raise the constitutionality of a statute." Zingale v. Crossings at Fleming Island, No. 1D06-2026, 1D06-2158 (Fla. 1st DCA order filed June 26, 2007). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. Based on the reasoning explained below, we hold that a property appraiser acting in his or her official capacity does not have standing to raise the constitutionality of a statute as a defense in an action filed by a taxpayer.

FACTS AND PROCEDURAL HISTORY
The Crossings at Fleming Island Community Development District (District) is a community development district in Clay County, Florida, established by general law, as set forth in chapter 190, Florida Statutes. The District is a residential community that owns and operates several public recreational facilities, including a golf course, a swim and tennis center, a second swim center, and four playgrounds. Beginning in December 2000, the District filed three complaints in the Fourth Judicial Circuit Court in and for Clay County *795 for declaratory and injunctive relief against Wayne Weeks, as the Clay County Property Appraiser (Appraiser), Jimmy Weeks, as the Clay County Tax Collector (Tax Collector), and Jim Zingale, as the Executive Director of the Florida Department of Revenue (DOR). The District asserted that pursuant to section 189.403(1), Florida Statutes (1999), a community development district is to be treated as a municipality for ad valorem tax purposes, and thus the Appraiser wrongfully denied exemptions for the above listed properties during the years 2000, 2001, and 2002. Alternatively, the District asserted that it was entitled to equitable relief because the Appraiser denied the exemptions in violation of its equal protection rights and Florida's uniformity and equality laws. The Appraiser raised the affirmative defense that section 189.403(1) was unconstitutional and argued that the properties were not entitled to exempt status. Crossings, 960 So.2d at 22.
The District filed motions to strike the affirmative defense in each now-consolidated case, arguing that the Appraiser lacked standing to challenge the constitutionality of a statute. After a hearing, the trial court granted the motions to strike. Crossings at Fleming Island Cmty. Dev. Dist. v. Weeks, No. 02-1024-CA (Fla. 4th Cir. Ct. order filed May 14, 2003) (Order Striking Affirmative Defense); Crossings at Fleming Island Cmty. Dev. Dist. v. Weeks, No. 01-920-CA (Fla. 4th Cir. Ct. order filed July 7, 2003) (same); Crossings at Fleming Island Cmty. Dev. Dist. v. Weeks, No. 00-921-CA (Fla. 4th Cir. Ct. order filed July 7, 2003) (same).
After a one-day bench trial, the trial court found that the golf course (excluding the bar, restaurant, and pro shop), the swim and tennis center, the swim center, and the playgrounds were exempt from ad valorem taxation for tax years 2000 through 2002 because the properties were used for activities that were essential to the health, morals, safety, and general welfare of the people within the District. The trial court ordered the Tax Collector to refund ad valorem taxes paid on the exempt properties for those years. The trial court also found as independent grounds for relief that the Appraiser violated the uniformity and equality requirements of Florida law by the disparity of treatment of the District's property from property of similar character and use owned by other entities in Clay County. Crossings at Fleming Island Cmty. Dev. Dist. v. Weeks, Nos.2000-921-CA, 2001-920-CA, 2002-1024-CA (Fla. 4th Cir. Ct. amended final judgment filed Apr. 17, 2006).
The Appraiser appealed to the First District, arguing that the trial court erred in finding that the golf course and the swim and tennis center were entitled to ad valorem tax exemption; in granting the District's motion to strike his affirmative defense that section 189.403(1) was unconstitutional; and in denying a motion for recusal. The Appraiser argued on appeal that he had standing because he may defensively raise the constitutionality of a statute and, alternatively, because he may raise the constitutionality of a statute to protect public funds. The DOR challenged all of the exemptions on appeal. Crossings, 960 So.2d at 24, 26.
The First District affirmed the trial court's holding that the properties were exempt from ad valorem taxation pursuant to section 189.403(1), Florida Statutes (1999), and section 196.199(1), Florida Statutes (1999) (creating statutory exemption for property of "municipalities of this state or of entities created by general or special law ... which is used for governmental, municipal, or public purposes"). The First District reversed the trial court's alternative basis for granting relief, *796 finding that no disparate treatment had been proven. Crossings, 960 So.2d at 26.
The First District also reversed the trial court's ruling that the Appraiser lacked standing to challenge the constitutionality of section 189.403(1). Citing to Fuchs v. Robbins, 818 So.2d 460, 464 (Fla.2002), the First District held that the Appraiser could defensively raise the constitutionality of a statute in a lawsuit filed by a taxpayer. Crossings, 960 So.2d at 28. Because it found that the appraiser had standing due to his procedural status as a defendant, the First District did not address the Appraiser's alternative public funds argument. Id. at 26. Ultimately, the First District reversed and remanded for the trial court to address the Appraiser's affirmative defense.[1]
Following the First District's decision, the District filed a motion to certify conflict with the Second District's decision in Sun `N Lake, where the Second District held that a property appraiser did not have standing to challenge the constitutionality of section 189.403(1) in a tax suit filed by an independent special district. The First District granted the motion. The DOR, joined by the Appraiser, filed a motion for rehearing, motion for rehearing en banc, or in the alternative, motion to certify a question of great public importance, each of which was denied.

ANALYSIS
In Fuchs, this Court held that a property appraiser seeking review of an adverse decision of the county value adjustment board did not have standing to file an action pursuant to section 194.036(1), Florida Statutes (1997), to argue that an applicable taxing statute was unconstitutional. After explaining that section 194.036(1) preserved the historical rule that a public official acting in his or her official capacity does not have standing to initiate an action challenging the validity of a statute and holding that the property appraiser in Fuchs thus lacked standing, the Court added that a property appraiser may raise such a challenge as "a constitutional defense in an action initiated by the taxpayer challenging a property assessment" or where "the taxing statute at issue involves the disbursement of public funds." Fuchs, 818 So.2d at 464.[2] As this Court recognized in Sunset Harbour, our discussion in Fuchs of whether a property appraiser would have standing to challenge the constitutionality *797 of a statute as a defense in a taxpayer suit was obiter dictum because the property appraisers in the conflict cases underlying Fuchs both filed lawsuits challenging the tax exemption statutes. Sunset Harbour, 914 So.2d at 928.
In the instant case, the District argues that the First District erred in relying on the defensive posture dictum in Fuchs to hold that a property appraiser has standing to challenge the constitutionality of a statute as a defense in an action filed by a taxpayer. The District, joined by the Florida Chamber of Commerce as amicus curiae, urges this Court to disapprove the defensive posture dictum and quash the First District's decision. In contrast, the Appraiser, joined by the Florida Association of Property Appraisers, Inc., and numerous other property appraisers as amici curiae, asks this Court to approve the dictum and the First District's decision. In the alternative, the property appraisers ask this Court to find the public funds exception applicable to property appraisers challenging taxing statutes and affirm on that basis the First District's holding that the Appraiser had standing to challenge section 189.403(1). Finally, the Appraiser argues on appeal that the First District erred in affirming the trial court's decision that the golf course, swim and tennis centers, and playgrounds are exempt from ad valorem taxation pursuant to sections 189.403(1) and 196.199(1), Florida Statutes (1999), because the properties are used exclusively for an exempt public purpose. We decline to review this issue and limit our review to the issue upon which the district court has certified conflict.
Similarly, we decline to review whether the public funds exception is applicable to property appraisers wishing to challenge the constitutionality of taxing statutes. While the Appraiser raised the public funds exception on appeal to the First District, it appears from the record that the Appraiser failed to raise the issue before the trial court. Because the issue was not presented to the trial court, we decline to address the issue at this time. See Moss v. Moss, 939 So.2d 159, 166 (Fla. 2d DCA 2006) (declining to review issue not properly preserved for appellate review and explaining that "[t]he trial court could not err by denying a claim that was never actually presented to it"). We do caution that past precedent indicates that the public funds exception is a narrow exception. See, e.g., Dep't of Educ. v. Lewis, 416 So.2d 455, 459 (Fla.1982) (holding that public funds exception did not confer standing to challenge constitutionality of proviso in appropriations bill upon Department of Education, State Board of Education, and Commissioner of Education in his official capacity, and distinguishing such entities and officials from comptroller, who "as the state's chief officer for disbursement of funds, would have standing to challenge a proviso in an appropriations bill").
Turning to the paramount issue before this Court, we find that this Court's decision in State ex rel. Atlantic Coast Line Railway Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922), which held that a public official may not defend his nonperformance of a statutory duty by challenging the constitutionality of the statute, is binding authority in the instant case. The Atlantic Coast Line decision promotes an important public policy of ensuring the orderly and uniform application of state law and is consistent with over eighty years of legislative enactments relating to tax assessment litigation. Accordingly, we disapprove the defensive posture exception dictum from Fuchs, which is inconsistent with the rule of Atlantic Coast Line, and quash the First District's decision.
*798 The controversy underlying Atlantic Coast Line began in 1921, when the Legislature created the position of the State Equalizer of Taxes and a State Board of Equalizers. Ch. 8584, Laws of Fla. (1921). The Equalizer's duty was to examine the tax rolls of the counties to ascertain whether tax valuations across property classes were reasonably uniform and to give orders and directions to the county property appraisers to accomplish a reasonably uniform tax assessment. County commissioners were charged with ensuring that the county property appraisers followed the State Equalizer's orders and directions. In the event a board of county commissioners was dissatisfied with the State Equalizer's orders, it could appeal to the State Board of Equalizers, consisting of the Governor, the State Treasurer, and the Attorney General. Id. §§ 1-5.[3] The Act also provided that the State Comptroller was to assess all property in the state owned by railroad companies and that a railroad company dissatisfied with its assessment could appeal directly to the Board of Equalizers. Id. §§ 6-7.
In Atlantic Coast Line, a railway company was dissatisfied with the Comptroller's assessment of its property and filed an appeal with the State Board of Equalizers pursuant to chapter 8584, section 7. When the board refused to hear the appeal, the railway petitioned for a writ of mandamus compelling the board to hear its appeal, and the board responded by arguing that sections 6 and 7 of the law were unconstitutional. The Court framed the issue presented as whether a ministerial officer has "the right or power to declare an act unconstitutional, or to raise the question of its unconstitutionality without showing that he will be injured in person, property, or rights by its enforcement." Atlantic Coast Line, 94 So. at 682. In answering in the negative, the Court explained that "every act of the Legislature is presumptively constitutional until judicially declared otherwise, and the oath of office `to obey the Constitution' means to obey the Constitution, not as the officer decides, but as judicially determined." Id. at 683. The Court found that to allow a public official to refuse to obey a law would be "the doctrine of nullification, pure and simple." Id. As a result, the Court held that an allegation of unconstitutionality is "unwarranted, unauthorized, and affords no defense" in a mandamus proceeding. Id. at 685.
In the years following Atlantic Coast Line, Florida courts identified several exceptions to the general rule that public officials may not refuse to administer a statute due to a belief that it is unconstitutional. However, in Barr v. Watts, 70 So.2d 347 (Fla.1953) (granting petition for writ of mandamus to compel State Board of Law Examiners to permit applicant to sit for admission examination), the Court reaffirmed the rule from Atlantic Coast Line that the "right to declare an act unconstitutional ... cannot be exercised by the officers of the executive department under the guise of the observance of their oath of office to support the Constitution" and clarified the narrow circumstances in which a public official has standing to challenge a statute. Barr, 70 So.2d at 351. The Court explained that allowing executive officers to refuse to administer statutes *799 not yet judicially passed upon would result in "chaos and confusion" and that the "people of this state have the right to expect that each and every such state agency will promptly carry out and put into effect the will of the people as expressed in the legislative acts of their duly elected representatives." Id. at 351. The Court then specifically disapproved dictum from City of Pensacola v. King, 47 So.2d 317 (Fla.1950), and State ex rel. Harrell v. Cone, 130 Fla. 158, 177 So. 854 (1938), that could be interpreted as authorizing a public official to refuse to apply a statute on the theory that it would be a violation of his oath of office to apply a statute that he or she believes is unconstitutional. Barr, 70 So.2d at 350.
In its own dicta, the Barr Court approved two exceptions to the general rule that a ministerial officer may not raise the constitutionality of a statute with which he or she is charged to administer. First, citing Atlantic Coast Line, the Court found that a ministerial officer may raise the constitutionality of a statute upon showing that "he will be injured in his person, property, or rights by its enforcement." Barr, 70 So.2d at 350. Second, citing Steele v. Freel, 157 Fla. 223, 25 So.2d 501 (1946), the Court found that a ministerial officer may challenge the constitutionality of a statute where "his administration of the Act in question will require the expenditure of public funds." Barr, 70 So.2d at 350.
Notably, while the Board of Law Examiners was the defendant in the Barr litigation, no defensive posture exception was discussed. Instead, the defensive posture exception cited by the First District appears in this Court's decisions in Fuchs and Lewis, neither of which concerned a public official defensively raising the constitutionality of a statute. Lewis in turn cited three cases in support of the defensive posture exception: City of Pensacola; Cone; and State ex rel. Florida Portland Cement Co. v. Hale, 129 Fla. 588, 176 So. 577 (1937). In each, a public official raised a challenge to a statute as a defense in an action initiated by another party, but none of the cases expressly relied on a defensive posture exception. Rather, as pointed out by Justice Bell in his specially concurring opinion in Sunset Harbour, each can be read in terms of the public officials having standing as a result of the official's duty to control or disburse public funds. 914 So.2d at 935-37.
In summary, we have found no support for the defensive posture exception. The dictum in Fuchs is inconsistent with the rule of Atlantic Coast Line, which remains good law, and thus Fuchs should be disapproved.[4] While we recognize that property appraisers have a superior perspective regarding taxing statutes and are *800 perhaps uniquely situated to protect taxpayers from unconstitutional exemptions, we find the policy interest against selective enforcement of the law more compelling. As the Court in Barr explained:
The people of this state have the right to expect that each and every such state agency will promptly carry out and put into effect the will of the people as expressed in the legislative acts of their duly elected representatives. The state's business cannot come to a stand-still while the validity of any particular statute is contested by the very board or agency charged with the responsibility of administering it and to whom the people must look for such administration.
70 So.2d at 351.
Moreover, no common law or statutory developments in the realm of ad valorem taxation since our decision in Atlantic Coast Line have altered the basic principle, rooted in the doctrine of separation of powers, that property appraisers must abide by all applicable Florida statutes when assessing property and thus do not have standing to challenge the constitutionality of such statutes. To the contrary, a review of the statutory and common law history of tax assessment litigation confirms that while property appraisers have been given some statutory rights to contest property assessments and assessment policies, they have not been granted standing in their official capacities to challenge taxing statutesregardless of whether the property appraiser happens to be a plaintiff or a defendant in the action.
Historically, taxpayers have had a statutory right to administrative review of property assessments. Any taxpayer who felt "aggrieved at the valuation placed upon any item of property" could complain to the board of county commissioners at its meeting in August of each year. § 716, Rev. Gen.Stat. Fla. (1920). The role of the county commissioners in the tax assessment process varied little until 1969. During this period, a taxpayer who was dissatisfied with the value assigned to his or her property could raise an objection before the board of county commissioners, and if dissatisfied with the decision of the board, the taxpayer could authorize the tax appraiser to advertise and conduct a public auction to determine the value of the disputed property. § 193.271, Fla. Stat. (1967). There was no statutory recourse for a property appraiser who was dissatisfied with the decision of the board.
Beginning in 1921, the Legislature created a second avenue of review of a tax assessment by enacting chapter 8586, which "Vest[ed] in Courts of Chancery the Jurisdiction to Inquire Into and Determine the Legality of Tax Assessments and to Enjoin the Collection of Illegal Taxes on Real or Personal Property." Ch. 8586, Laws of Fla. (1921). This Act provided that the chancery courts had jurisdiction in all cases involving the legality of any tax. But like the previously available administrative review before the board of county commissioners, the Act was designed to give taxpayers, not property appraisers, access to the courts to adjudicate tax disputes. See id. (requiring "complainant" to "tender into court and file with the bill of complaint the full amount of any such tax, assessment or toll which he shall admit to be legal and due by him, or file with the bill of complaint a receipt showing payment of the same prior to the institution of the suit").
In 1969, the Legislature created county boards of tax adjustment to assume the responsibilities relating to ad valorem taxation of the county boards of commissioners, including the duty to hear taxpayer complaints about tax assessments. Ch. 69-140, § 2, Laws of Fla.; see also *801 §§ 194.032, 194.062, Fla. Stat. (1969).[5] The board of tax adjustment has been known by several names since 1969, most recently becoming the value adjustment board in 1991, but has at all times consisted of three members of the governing body of the county and two members of the county school board. In 1974, the statutes were revised to expressly provide that a taxpayer's decision to pursue an administrative hearing before the board of tax adjustment would not preclude an action in the circuit court pursuant to section 194.171, Florida Statutes. Ch. 74-234, § 6, Laws of Fla. However, property appraisers continued to have no statutory right to instigate a legal challenge to a tax assessment.
In 1976, the board of tax adjustment was renamed the property appraisal adjustment board. Ch. 76-133, § 6, Law of Fla. More significantly, that same year the Legislature amended section 194.032, Florida Statutes, to provide a method of appealing the board's decision to the circuit courtthe first legislation to grant property appraisers a statutory right to file a lawsuit challenging a tax assessment. Ch. 76-234, § 3, Laws of Fla.[6] Newly created subsection 194.032(6) provided that a taxpayer could file an action in the circuit court pursuant to section 194.171 to contest an assessment and that a property appraiser who disagreed with the decision of the board could appeal to the circuit court in limited circumstances. Specifically, the statute authorized an appraiser to seek judicial review if:
1. The property appraiser determines and affirmatively asserts in any legal proceedings that there is a specific constitutional or statutory violation, or a specific violation of administrative rules, in the board's decision, except that nothing herein shall authorize the property appraiser to institute any suit to challenge the validity of any portion of the Constitution or of any duly enacted legislative act of this state;

2. There is a variance from the property appraiser's assessed value in excess of the following: 15 percent variance from any assessment of $50,000 or less; 10 percent variance from any assessment in excess of $50,000 but not in excess of $500,000; 7 1/2 percent variance from any assessment in excess of $500,000 but not in excess of $1,000,000; or 5 percent variance from any assessment in excess of $1,000,000; or
3. There is an assertion by the property appraiser to the Department of Revenue that there exists a consistent and continuous violation of the intent of the law or administrative rules by the Property Appraisal Adjustment Board in its decisions.
§ 194.032(6)(a), Fla. Stat. (1977) (emphasis added).[7] The 1976 act likewise revised section 194.181(1) to include an appraiser *802 appealing from a decision of the board pursuant to section 194.032 as a potential plaintiff in a tax suit. Ch. 76-234, § 4, Laws of Fla. As discussed above, in Fuchs the Court considered the scope of a property appraiser's standing pursuant to section 194.036(1)(a). The Court expressly adopted the Second District's reasoning that "[t]his statutory prohibition of constitutional challenges by property appraisers is in accord with the general common law principle denying ministerial officers the power to challenge the constitutionality of statutes." Fuchs, 818 So.2d at 464 (quoting Turner v. Hillsborough County Aviation Authority, 739 So.2d 175, 179-80 (Fla. 2d DCA 1999) (citing Atlantic Coast Line; Barr)).
Soon after the 1976 legislation enabling property appraisers to appeal adverse decisions of the property appraisal adjustment board, this Court was asked to decide whether property appraisers had standing to file a declaratory action alleging uncertainty about how to apply various advisory opinions by the Attorney General. See Dep't of Revenue v. Markham, 396 So.2d 1120 (Fla.1981). We held that property appraisers generally do not have standing to initiate declaratory actions to avoid performing their official duties.
For important policy reasons, courts have developed special rules concerning the standing of governmental officials to bring a declaratory judgment action questioning a law those officials are duty-bound to apply. As a general rule, a public official may only seek a declaratory judgment when he is "willing to perform his duties, but ... prevented from doing so by others." Reid v. Kirk, 257 So.2d 3, 4 (Fla.1972). Disagreement with a constitutional or statutory duty, or the means by which it is to be carried out, does not create a justiciable controversy or provide an occasion to give an advisory judicial opinion. See Askew v. City of Ocala, 348 So.2d 308 (Fla.1977). Since the property appraisers under section 195.027(1), Florida Statutes (1977), had a clear statutory duty to comply with the prescribed Department of Revenue regulations governing the taxability of household goods, they clearly lacked standing for declaratory relief in their governmental capacities.
Id. at 1121 (footnote omitted).
While Markham was pending before this Court, the Legislature amended section 195.092, Florida Statutes, which previously allowed the DOR to file suit against any public official charged with executing Florida's tax laws, to provide:
The property appraiser or any taxing authority shall have the authority to bring and maintain such actions as may be necessary to contest the validity of any rule, regulation, order, directive or determination of any agency of the state, including but not limited to disapproval of all or any part of an assessment roll or a determination of assessment levels.
Ch. 80-274, § 6, Laws of Fla. In essence, the Legislature partially overruled Markham before it was released.[8] However, importantly for the current inquiry, the Legislature did not authorize property appraisers to challenge state statutes.
Moreover, subsequent decisions have relied on the reasoning in Markham to hold that property appraisers do not have standing to file declaratory actions challenging the constitutionality of a taxing statute. For example, in Miller v. Higgs, 468 So.2d 371 (Fla. 1st DCA 1985), disapproved *803 on other grounds by Capital City Country Club, Inc. v. Tucker, 613 So.2d 448 (Fla.1993), the Monroe County Property Appraiser filed a declaratory action alleging that chapter 80-368, Laws of Florida, was an unconstitutional reclassification of leasehold interests in government-owned land. The First District affirmed the trial court's ruling that the property appraiser lacked standing as a property appraiser. Miller, 468 So.2d at 374 (citing Markham). The First District explained that "[s]tate officers and agencies are required to presume that the legislation affecting their duties is valid, and they do not have standing to initiate litigation for the purpose of determining otherwise." Id. (citing Lewis; Barr); see also Jones v. Dep't of Rev., 523 So.2d 1211, 1214 (Fla. 1st DCA 1988) (holding that property appraiser did not have standing in his official capacity to pursue declaratory judgment challenging validity of taxing statute).
In summary, this review has revealed that while throughout the 1970s and 1980s the Legislature acted to empower property appraisers to seek judicial review of tax assessments and DOR regulations and directives, the Legislature did not alter the common law principle expressed in Atlantic Coast Line and Markham that property appraisers, as public officials, lack standing to challenge the constitutionality of a statute. Accordingly, we find Atlantic Coast Line to be binding in the instant case and hold that the property appraiser did not have standing to raise the constitutionality of section 189.403(1) as a defense.

CONCLUSION
Based on the foregoing, we resolve the conflict among the district courts by holding that a property appraiser does not have standing in his or her official capacity to raise the constitutionality of a statute as a defense in a tax suit filed by a taxpayer. In the case on review, the trial court did not err in striking the property appraiser's affirmative defense challenging the constitutionality of section 189.403(1). We therefore quash the decision of the First District in this case and approve the decision of the Second District in Sun `N Lake on the issue of property appraiser standing.
It is so ordered.
QUINCE, C.J., and ANSTEAD, PARIENTE, CANTERO, and BELL, JJ., concur.
LEWIS, J., concurs in result only.
NOTES
[1] Judge Kahn concurred in part and dissented in part. He would have affirmed the trial court's ruling that the Appraiser did not have standing based on the reasoning expressed in Justice Bell's concurring opinion in Sunset Harbour Condominium Ass'n v. Robbins, 914 So.2d 925, 933-38 (Fla.2005) (Bell, J., specially concurring), and the Second District's decision in Sun `N Lake. Crossings, 960 So.2d at 29.
[2] Section 194.036(1), Florida Statutes (1997), defines the limited circumstances in which a property appraiser may file an action contesting the decision of the value adjustment board relating to a tax assessment. Particularly, section 194.036(1)(a) states that "nothing herein shall authorize the property appraiser to institute any suit to challenge the validity of any portion of the constitution or of any duly enacted legislative act of this state." § 194.036(1)(a), Fla. Stat. (1997) (emphasis added). Section 194.036(2) provides that a taxpayer could bring an action to contest a tax assessment pursuant to section 194.171 without placing conditions on this statutory right. While the statute expressly prohibits a property appraiser from instituting a suit challenging the constitutionality of a statute, the question at issue in Fuchs, it does not place any restrictions on a property appraiser's answer to a suit filed by a taxpayer or expressly sanction defenses previously prohibited by common law. Thus, section 194.036 was not cited to support the defensive posture exception discussed in Fuchs and does not resolve the question currently before the Court.
[3] Chapter 8584, Laws of Florida (1921), relating to the equalization of property taxes across counties, was repealed, and the position of State Tax Equalizer was abolished in 1931. Ch. 15027, § 1, Laws of Fla. (1931). Currently, the DOR serves this oversight function by reviewing many stages of the tax assessment and collection process, and setting policies and procedures for tax assessors, tax collectors, and county value adjustment boards. See generally ch. 195, Fla. Stat. (2007).
[4] We disapprove the defensive posture dictum rather than distinguish Fuchs, which concerned a taxpayer appeal from a decision of the value adjustment board rather than an action filed in the circuit court without first seeking administrative review, because a taxpayer's decision whether to first seek administrative review does not render the holding of Atlantic Coast Line any less applicable. Section 194.034(b), Florida Statutes (1999), which outlines procedures for value adjustment board hearings, provides that "[n]othing herein shall preclude an aggrieved taxpayer from contesting [in circuit court] his or her assessment in the manner provided by s. 194.171, whether or not he or she has initiated an action pursuant to s. 194.011 [providing for informal conferences with property appraisers and petitions to value adjustment board]." Allowing property appraisers to raise some types of defenses in an appeal from a decision of the value adjustment board and not in a direct action to the circuit court, or vice versa, would not be in keeping with the statutory directive that a taxpayer's circuit court action should not be affected by whether or not that taxpayer has first petitioned the value adjustment board.
[5] At that time, the Legislature also enacted a statute that enabled a taxpayer who was dissatisfied with the board's decision to seek arbitration, although the arbitration statute was repealed just two years later. § 194.033, Fla. Stat. (1969); ch. 69-140, § 5, Laws of Fla.; ch. 71-371, Laws of Fla. Notably, the statute enabled taxpayers, not property appraisers, to seek arbitration of the board's decision.
[6] While this process is referred to as an "appeal" of the board's decision, actions brought in the circuit court pursuant to section 194.032, now section 194.036, are original actions, not appeals. Williams v. Law, 368 So.2d 1285, 1286 (Fla. 1979).
[7] The provisions governing appeals of the board's decisions were moved to their own statute, section 194.036, Florida Statutes, in 1983. Except for minor editorial changes, the conditions for appealing the board's decisions remain unchanged.
[8] The Court did not address newly enacted section 195.092(2), Florida Statutes (Supp. 1980), in its decision because that statute was not applicable to Markham's suit filed in 1978. Markham, 396 So.2d at 1121 n. 1.